919 F.2d 516
 Fed. Sec. L. Rep. P 95,647, 18 Fed.R.Serv.3d 1320,
RICO Bus.Disp.Guide 7631
 Ann Marie STITT, Carol E. Williams, Jon A. Williams, Gloria
May Heckman, Mark A. Williams, Carol D. Williams,
James R. Stitt, Plaintiffs-Appellants,
and
Norma Jean Hutcherson, Plaintiff,
v.
Dale A. WILLIAMS, Agean, Ltd., a California Limited
Partnership; Creekside, Ltd., a California Limited
Partnership; The 49-010-19, a California Limited
Partnership; Norwood, Ltd., a California Limited
Partnership, and Does 1 through 300; Leasco Investments,
Inc.; Leasco Realty Company, Inc.; Bay Blue Vistas, Ltd.;
Delta Park, Ltd.; Delta, Ltd.; Gunnar I, Ltd.;
Sandalwood, Ltd.; Colony Cove IV, Ltd.; Colony Cove V,
Ltd.; Ontario Mobile, Ltd.; Ponderosa Pines, Ltd.; Seton
Mobile Home Park, Ltd.; Rory I, Ltd.; Ninth Street
Condominium, Ltd.; Villa Del Arroyo, Ltd.; Victoria, Ltd.,
and Does 1 through 1000, inclusive, Defendants-Appellees.
Ann Marie STITT; Carol E. Williams; Jon A. Williams;
Gloria May Heckman; Mark A. Williams; Carol D.
Williams-Vyfvinkel; James R. Stitt,
Plaintiffs-Appellants,
and
Lewis & Company, Lawyers: L. Burke Lewis, Amy J. Cassedy,
and Arthur L. Martin, Claimant-Appellant,
v.
Dale A. WILLIAMS; Agean, Ltd., a California Limited
Partnership; Creekside, Ltd., a California Limited
Partnership; The 49-010-19, a California Limited
Partnership; Norwood, Ltd., also known as Southwind, a
California Limited Partnership and Does 1 through 300;
Leasco Investments, Inc.; Leasco Realty Company, Inc.; Bay
Blue Vistas, Ltd.; Delta Park, Ltd.; Delta, Ltd.; Gunnar
I, Ltd.; Sandalwood, Ltd.; Colony Cove IV, Ltd.; Colony
Cove V, Ltd.; Ontario Mobile, Ltd.; Ponderosa Pines, Ltd.;
Seton Mobile Home Park, Ltd.; Rory I, Ltd.; Ninth Street
Condominium, Ltd.; Villa Del Arroyo, Ltd.; Victoria, Ltd.,
and Does 1 through 1000, inclusive, Defendants-Appellees.
Ann Marie STITT; Carol E. Williams; Jon A. Williams;
Gloria May Heckman; Mark A. Williams; Carol D.
Williams; James R. Stitt, Plaintiffs-Appellees,
and
Lewis & Company, Lawyers: L. Burke Lewis, Amy J. Cassedy,
and Arthur L. Martin, Claimant-Appellant,
v.
Dale A. WILLIAMS; Agean, Ltd., a California Limited
Partnership; Creekside, Ltd., a California Limited
Partnership; The 49-010-19, a California Limited
Partnership (aka "Southwind"); Norwood, Ltd., a California
Limited Partnership and Does 1 through 300, inclusive;
Leasco Investments, Inc., Leasco Realty Company, Inc., Bay
Blue Vista, Ltd., Delta Park, Ltd., Delta, Ltd., Gunnar I,
Ltd., Sandalwood, Ltd., Colony Cove I, Ltd., Colony Cove V,
Ltd., Ontario Mobile Ltd., Ponderosa Pines, Ltd., Seton
Mobile Home Park, Ltd.; Rory I, Ltd., Ninth Street
Condominium, Ltd.; Villa Del Arroyo, Ltd., Victoria, Ltd.,
and Does 1 through 1000, inclusive, Defendants-Appellants.
 Nos. 87-2090, 88-1646 and 88-1732.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 16, 1989.
Decided Nov. 15, 1990.
 
 L. Burke Lewis, Lewis and Co., Santa Monica, Cal., for plaintiffs-appellants-cross-appellees.
 Thomas M. Mathiowetz and Steven B. Eggleston, Wohl & Eggleston, Sacramento, Cal., for defendants-appellees-cross-appellants.
 Appeal from the United States District Court for the Northern District of California.
 Before GOODWIN, Chief Judge, PREGERSON and REINHARDT, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 Appellants brought this action seeking to recover damages allegedly incurred by reason of appellees' acts of securities fraud, racketeering, failure to comply with securities registration requirements, and breach of fiduciary duty. The district court granted summary judgment for appellees, holding that most of the federal claims were time-barred and that appellants had failed to offer any evidence of a scheme or artifice to defraud.[1] Several months later, the court imposed sanctions on appellants and their counsel in the amount of $41,378.39 for having violated Rule 11 in their filing of a brief in opposition to appellees' motion for summary judgment.
 
 
 2
 Appellants appealed both the grant of summary judgment and the imposition of sanctions; appellees cross-appealed on the sanctions issue. The appeals were consolidated for consideration by this panel. For the reasons discussed below, we affirm the district court's order granting summary judgment, but we reverse the award of Rule 11 sanctions. Finally, we remand so that the district court may consider the amount of attorneys' fees appellants must pay to appellees pursuant to the terms of one of the limited partnership agreements.
 
 BACKGROUND
 
 3
 Appellants' First Amended Complaint alleged that appellee Dale A. Williams ("Dale"), a land developer and syndicator, defrauded appellants[2] in the course of managing, as general partner, a number of limited partnerships of which appellants were limited partners. In particular, appellants alleged that Dale:
 
 
 4
 (1) misrepresented to appellants the nature of the partnerships agreements and the allocation of profits and other interests the agreements provided for;
 
 
 5
 (2) failed to provide appellants with the complete texts of the partnership agreements, registration materials, disclosure statements, or exemptions from registration requirements;
 
 
 6
 (3) presented to appellants for their signature, which he obtained, only the blank signature pages from the partnership agreements while representing to appellants that the agreements were fair, customary and consistent with prior representations and understandings;
 
 
 7
 (4) attached to the signed signature pages partnership agreements which contained unfair allocations of profits and other interests;
 
 
 8
 (5) failed to provide appellants with copies of the partnership agreements for a year and a half after appellants had signed them;
 
 
 9
 (6) made repeated promises and representations that the percentage interests of the partnerships would be changed to reflect a fair allocation of profits and other interests;
 
 
 10
 (7) commingled and overborrowed on appellants' partnership assets, and
 
 
 11
 (8) failed to account or make available to appellants the partnerships' books and records.
 
 
 12
 Appellants alleged that, in carrying out these actions, Dale violated the Securities Act of 1933, 15 U.S.C. Sec. 77a et seq., the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78a et seq., rules and regulations promulgated under those statutes, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Sec. 1961 et seq., and state and federal "statutory and common law." Appellants sought damages, rescission of the limited partnerships' securities agreements, reformation of the securities agreements to conform to alleged prior oral agreements, dissolution of the partnerships, and an accounting.
 
 STANDARD OF REVIEW
 
 13
 This court reviews de novo a trial court's grant of summary judgment. Lojek v. Thomas, 716 F.2d 675, 677 (9th Cir.1983). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the opposing party, there is no genuine issue of material fact and the substantive law was correctly applied. Roberts v. Continental Insurance Co., 770 F.2d 853, 855 (9th Cir.1985).
 
 
 14
 We review for abuse of discretion a district court's denial of an application made pursuant to Fed.R.Civ.P. 56(f) to continue a ruling on a summary judgment motion to permit discovery. Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1417 (9th Cir.1987).
 
 
 15
 Appellate review of orders imposing sanctions under Rule 11 of the Federal Rules of Civil Procedure may require a number of separate inquiries. Zaldivar v. City of Los Angeles, 780 F.2d 823, 828 (9th Cir.1986). If the facts relied upon by the district court to establish a violation of the Rule are disputed on appeal, we review the factual determinations of the district court under a clearly erroneous standard. Id. If the legal conclusion of the district court that the facts constitute a violation of the Rule is disputed, we review that legal conclusion de novo. Id. Finally, if the appropriateness of the sanctions imposed is challenged, we review the sanction under an abuse of discretion standard. Id.
 
 DISCUSSION
 I. The Summary Judgment Appeal
 A. Federal Securities Registration Claims
 
 16
 The district court granted summary judgment for appellees on appellants' federal securities registration claims[3] because it found that the claims were barred by the statute of limitations.[4] According to the district court, securities registration claims must be brought within one year of discovery of the claims and, in any event, within three years of the offering. Finding that all offerings occurred before 1980, the court held that the registration claims stated in appellants' complaint, filed July 16, 1984, were barred by the statute of limitations.
 
 
 17
 We agree with the district court's reasoning. Dale's alleged failure to register the securities is not actionable because the securities were offered and purchased more than three years before appellants brought their lawsuit. 15 U.S.C. Sec. 77m. Appellants purchased their limited partnership interests between 1976 and 1979.[5] Because appellants did not file their complaint until 1984, their registration claims are barred by the statute of limitations. See Admiralty Fund v. Hugh Johnson & Co., 677 F.2d 1301, 1308 (9th Cir.1982); 15 U.S.C. Secs. 77m, 77l (1), 77e.
 
 B. Securities Fraud Claims
 
 18
 The district court held that appellants' federal securities fraud claims were also barred by the statute of limitations. Applying California's three-year statute of limitations for fraud actions, the court determined that the statute began to run in 1979, when appellants received copies of the texts of the partnership agreements containing the allegedly unfair allocation of percentage interests. Because appellants did not bring their action until 1984, the court held, the statute of limitations barred their suit. The court rejected appellants' attempt to apply principles of tolling and equitable estoppel to escape the statute of limitations bar. Finally, the court rejected appellants' argument that several events taking place after the original formation of the partnerships constituted sales of securities, holding that these events did not restart the running of the limitations period.[6]
 
 
 19
 The district court's rulings on summary judgment were correct. First, the court properly applied California's three year statute of limitations for fraud actions. See Admiralty Fund v. Hugh Johnson & Co., 677 F.2d 1301, 1308-09 (9th Cir.1982); Cal.Civ.Proc.Code Sec. 338 (West Supp.1990). Second, the court correctly applied federal law to determine when the statute started to run. Under federal law, the statutory period "commences when the plaintiff discovered or could have discovered the fraud with the exercise of reasonable diligence...." Admiralty Fund, 677 F.2d at 1309. See also Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1417 (9th Cir.1987).
 
 
 20
 We have held that the question of notice of fraud is for the trier of fact. Admiralty Fund, 677 F.2d at 1309. Therefore, "the party seeking summary disposition has an extremely difficult burden to show that there exists no issue of material fact regarding notice." Id. at 1309-10. We hold that appellees have carried this burden. Appellants concede that they received copies of the texts of the partnership agreements, the blank and detached signature pages of which they had previously signed, in late 1979. Thus, the district court noted, appellants "were aware of the percentages by the end of 1979 at the latest." Appellants discovered the alleged fraud, i.e., Dale's attaching of allegedly unfair percentage allocations to the partnership agreements in violation of alleged representations and agreements, more than four years before bringing this action. Unless the statute of limitations was tolled or appellees are estopped from asserting it, appellants' securities fraud claims based on the formation of the limited partnerships are time-barred.
 
 
 21
 The district court correctly rejected appellants' equitable tolling and equitable estoppel arguments, but it failed to address adequately appellants' equitable estoppel claim. The case law is confused and contradictory, but the better reasoning states that equitable tolling applies when the plaintiff is unaware of his cause of action, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit. See Smith v. Mark Twain Nat'l Bank, 805 F.2d 278, 294 (8th Cir.1986); Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45, 49-50 (2d Cir.1985); Atkins v. Union Pac. RR, 685 F.2d 1146, 1149 (9th Cir.1982); Zukowski v. Dunton, 650 F.2d 30, 34-35 (4th Cir.1981); Naton v. Bank of California, 649 F.2d 691, 696 (9th Cir.1981); Bomba v. W.L. Belvidere, Inc., 579 F.2d 1067, 1070-71 (7th Cir.1978); City of Bedford v. James Leffel & Co., 558 F.2d 216, 218 (4th Cir.1977). Here, although the district court used the language of equitable estoppel, the test that it applied was relevant to equitable tolling. Because we reject both the equitable tolling and equitable estoppel claims, we affirm the district court's holding that the appellees were not barred from asserting the statute of limitations.
 
 
 22
 Appellants argue that the statute of limitations was tolled until 1984, when Dale allegedly announced that he would not carry out his prior promises to alter the partnership percentage allocations. Up until 1984, appellants assert, Dale "made continuing representations [to appellants] to the effect that the 'agreement' relative to the allocation of profits and losses was not as spelled out in the denominated partnership agreements, but was changed to what he orally represented, i.e., a 'fair' reallocation that would be reduced to writing some time soon." Accordingly, appellants argue, "every time [Dale] represented that changes to the allocations would be forthcoming, 'notice' of the fraud was eviscerated." Appellants conclude that under equitable tolling principles, they had no reason to suspect fraud until January of 1984, and that the statute of limitations began to run at that time.
 
 
 23
 Appellants' position lacks merit. While it is true that fraudulent concealment tolls the statute of limitations, N.L.R.B. v. Don Burgess Construction Corp., 596 F.2d 378, 382 (9th Cir.), cert. denied, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979), appellants have failed to allege "concealment" in this case later than 1979. As discussed above, appellants received copies of the texts of the partnership agreements in 1979. By 1979, therefore, appellants knew that Dale was acting pursuant to allegedly unfair and fraudulently obtained partnership agreements. Moreover, appellees assert that even as early as 1976 appellants received K-1 tax schedules from Dale which set forth the percentage interests contained in the partnership agreements. According to appellees, appellants used this information from the K-1's in their federal and state tax returns. Appellants do not controvert these assertions.[7] We can only conclude that appellants understood and relied on the percentage allocation figures beginning in 1976. Therefore, appellants' assertion that because of Dale's assurances they did not really know of the facts constituting the alleged fraud strains credulity. Because "fraudulent concealment tolls a statute of limitations only for as long as the concealment endures," id. at 383, and because any concealment ended no later than 1979, appellants cannot escape the bar of the statute of limitations by invoking the doctrine of equitable tolling.[8]
 
 
 24
 Appellants similarly may not rely upon the doctrine of equitable estoppel. This doctrine may be available when the defendant lulls the plaintiff into failing to bring suit. Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 232-33, 79 S.Ct. 760, 761-62, 3 L.Ed.2d 770 (1959); Atkins v. Union Pac. RR, 685 F.2d 1146, 1149 (9th Cir.1982). A reading of the original pleadings reveals that the appellants raised a legally non-frivolous claim that appellees made promises on which appellants foreseeably and reasonably relied, promises that misled appellants and caused them to delay instituting the litigation. We cannot, however, credit appellants' contention that despite the fact that Dale did not keep his repeated promises to alter the percentage distributions, they year after year reasonably relied on those promises and delayed instituting suit. We have observed that "if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987), cert. denied, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) (emphasis in original) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).
 
 
 25
 Appellants' contention that their alleged reliance on Dale's assurances was reasonable is highly improbable given the factual context described above. We hold that appellants have failed to present the persuasive evidence needed to show a genuine issue for trial. We therefore accept the district court's conclusion that appellees are not estopped from asserting the bar of the statute of limitations.
 
 
 26
 Lastly, the district court correctly rejected appellants' argument that three transactions separate from and subsequent to the initial formation of the limited partnerships are actionable as "forced sales" under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), and fall within the applicable statute of limitations. We agree that none of the alleged transactions qualified as a "purchase or sale" of securities under section 10(b).
 
 
 27
 The first transaction was a 1982 "call" by Dale to the limited partners of the Agean limited partnership. The district court, observing that a "call" for further investment by limited partners may be viewed as a purchase of a security, C.R. 404 at 10-11 (citing Goodman v. Epstein, 582 F.2d 388, 414 (7th Cir.1978), cert. denied, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979)), held that the call in this case did not constitute a purchase or sale of securities because none of the appellants responded to the call. Id. at 11.
 
 
 28
 Appellants contest the district court's conclusion, asserting that one of the appellants, Mrs. Carol E. Williams ("Carol"), participated in the refinancing of another limited partnership, Southwind, "in response to the Agean call." Appellants concede, however, that the Southwind proceeds were not invested in Agean. Appellants also argue that they responded to the call by "agree[ing] to refinance the Southwind property and 'spinning off' Brook Meadow [a mobile home park] from Agean to form a joint interest between [Dale] and [Carol], with subsequent allocations to the other Agean limited partners."[9]
 
 
 29
 Even if these actions were taken in response to the call, there is no evidence, nor do appellants allege, that any money resulting from the actions was invested in Agean.[10] A call results in a purchase of a security only when the limited partner actually makes a capital contribution in response. Goodman, 582 F.2d at 414. Therefore, the district court correctly rejected appellants' argument that the call was actionable under section 10(b).
 
 
 30
 The second transaction alleged by appellants to constitute a purchase or sale of securities was "the aborted 1984 sale of Southwind." According to appellants, in 1984 Dale represented to Carol that he had found a purchaser for the Southwind property. Appellants alleged that this representation put Carol "in the position of a 'forced sale,' leaving [Carol] with either of two options: (1) to do nothing and see her investment securities reduced to cash, or (2) to purchase the interest of [Dale] at a price based upon the aforesaid representations...." Carol allegedly agreed to purchase Dale's interest in Southwind. However, in June of 1984, Dale allegedly "dissolved the ... Southwind partnership ... and conveyed the subject real property to himself and [Carol], as tenants in common, with ... Dale possessing an undivided 51% interest in the subject property and Carol ... a 49% interest...." The contemplated sale never took place; thus, there was no "purchase or sale" of securities. For this reason, the district court properly rejected appellants' contention that this "aborted sale" subjected Dale to liability under section 10(b).
 
 
 31
 The third transaction appellants rely on was the "refinance" of Southwind. According to appellants, Dale arranged for a refinance of the Southwind property which yielded $920,000. As a result of the refinance, appellants argue, Carol "gave up valuable rights and had equity converted to cash...." Appellants contend that this constituted a sale of securities, because the transaction "transform[ed] ... a security holder's investment from an interest in a going enterprise to a right solely to receive payment in exchange for such interest," quoting McCloskey v. McCloskey, 450 F.Supp. 991, 995 (E.D.Pa.1978). Appellants assert that "[a]ny refinance of partnership property effectively converted the limiteds' investment from equity to cash and constitutes a 'sale' for purposes of Sec. 10(b) liability."
 
 
 32
 The district court properly rejected this argument. As appellants alleged in their complaint, following the Southwind refinance Carol retained her 49% interest in Southwind. Therefore, the refinancing did not force Carol to convert her shares into money, and does not fall within the "forced sale" doctrine. See Mosher v. Kane, 784 F.2d 1385, 1389 (9th Cir.1986), overruled on other grounds, In re Washington Public Power Supply System Securities Litigation, 823 F.2d 1349 (9th Cir.1987) (en banc).[11]
 
 C. RICO Claim
 1. Summary Judgment
 
 33
 Appellants asserted a cause of action against appellees under RICO, alleging acts of securities fraud and mail and wire fraud constituting a "pattern of racketeering activity." The district court granted summary judgment for appellees on this claim, holding that the securities fraud claims could not serve as predicate RICO acts and that appellants had failed to produce any evidence of a "scheme or artifice to defraud."
 
 
 34
 Appellants now argue that the district court overlooked ample evidence of securities violations and other predicate acts of mail and wire fraud committed by Dale; they also argue that they were deprived of the opportunity to conduct the discovery necessary to substantiate their claims. We address both of these issues.
 
 
 35
 First, appellants' securities fraud and securities registration claims cannot serve as predicate RICO offenses because they are subject to the uniform four-year statute of limitations for civil RICO actions established by the Supreme Court in Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). The limitations period begins to run when a plaintiff knows or should know of the injury which is the basis for the action. Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1415 (9th Cir.1987). As we held above, appellants knew of their alleged injuries by late 1979. They filed this action in 1984. Therefore, appellants' securities fraud and registration claims do not allege cognizable predicate acts.
 
 
 36
 As for the alleged acts of mail and wire fraud, we agree with the district court that appellants failed to produce any evidence that Dale had the requisite "specific intent to deceive or defraud." See Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1399-40 (9th Cir.1986). Our review of the record also persuades us that appellants failed to provide evidence that Dale had commingled funds of the limited partnerships or that he had used the mails or interstate wire communications in connection with the alleged commingling. Therefore, appellants failed to allege facts sufficient to withstand a motion for summary judgment. See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987), cert. denied, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).
 
 2. Opportunity for Discovery
 
 37
 Appellants, however, take issue with the district court's statement that, "[o]n the eve of trial, [appellants] have not advanced beyond the stage of unsubstantiated allegations, despite unrestricted access to [appellees'] books and records." Appellants argue that any failure on their part to present evidence supporting their claims was the result of improper discovery rulings by the district court, which denied them sufficient opportunity to conduct depositions and sufficient access to appellees' books and records. They also argue that the district court should have granted their Rule 56(f) motion for a continuance to conduct further discovery prior to the hearing on the summary judgment motion.[12]
 
 
 38
 Appellants' contentions lack merit. Appellants argue, for example, that on November 24, 1986, the district court "order[ed] defendants' summary judgment motion to be heard February 17, 1987, i.e., after defendants had completed their discovery but prior to plaintiffs' completing any of their discovery except the deposition of [Dale] which the court directed to be taken out of order."[13] However, the reporter's transcript demonstrates that the court in fact set March 23, 1987, as the hearing date for the summary judgment motion. (The motion was eventually heard on April 6, 1987.) The court set March 10, 1987, as the date appellants' opposition to the summary judgment motion was due. The court's previous discovery order of October 1, 1986, permitted appellants to take depositions between January 20, 1987 and February 19, 1987. Therefore, appellants had adequate opportunity to conduct and review depositions prior to the hearing on the summary judgment motion.[14]
 
 
 39
 Having reviewed the record, we conclude that appellants were afforded sufficient opportunity to conduct discovery. Accordingly, the district court did not abuse its discretion in refusing to grant appellants' Rule 56(f) motion.[15] See Volk v. D.A. Davidson, 816 F.2d 1406, 1416-17 (9th Cir.1987). Nor did the district court err in granting summary judgment on the RICO claim, because appellants failed to provide evidence sufficient to oppose the motion after adequate opportunity for discovery.
 
 
 40
 In conclusion, we hold that the district court correctly granted appellees' motion for summary judgment on all of appellants' claims.[16]
 
 II. The Sanctions Appeals
 A. Rule 11 Sanctions
 
 41
 Pursuant to Rule 11 of the Federal Rules of Civil Procedure,[17] the district court awarded appellees $41,378.39 for attorneys' fees and costs incurred following appellants' filing of a brief opposing appellees' motion for summary judgment. The court found, first, that appellants' securities registration claims were "legally unreasonable" from the outset of the litigation because they were clearly barred by the statute of limitations. The court found, second, that the securities fraud claims, by contrast, were not legally unreasonable from the time the action was brought because appellants presented a "superficially plausible" argument that appellees were estopped from raising the bar of the statute of limitations. Third, the court found that, by the time appellants filed their opposition to appellees' summary judgment motion, appellants had completely failed to provide evidence that Dale had intentionally or recklessly defrauded his family in the formation of the partnerships. The court concluded that appellants' opposition to the summary judgment motion on the securities fraud claims relating to partnership formation was factually unfounded. Fourth, the court found that appellants' "continued assertion" of securities fraud claims based on events post-dating the formation of the partnerships was legally unreasonable because none of the events actually constituted a sale of securities. Fifth, the court found that appellants' initial assertion of a RICO claim was not in itself frivolous, but that, by the time of the summary judgment hearing, appellants had presented no probative evidence supporting their allegations regarding commingling of funds or using the mails in connection with the alleged commingling. The court concluded that appellants' filing of an opposition to the summary judgment motion on the RICO claims was factually unfounded.
 
 
 42
 After setting out the above findings, the court held that appellants' March 27, 1987 filing of a brief opposing appellees' summary judgment motion violated Rule 11. The court imposed sanctions on appellants and their attorneys, jointly and severally, in the amount of all attorneys' fees and expenses incurred by appellees in connection with this action on and after March 27, 1987. Based on its review of the billing records submitted by appellees, the district court ordered appellants and their attorneys to pay appellees $41,378.39.
 
 
 43
 We reverse the district court's award of sanctions under Rule 11 because in imposing these sanctions the district court abused its discretion. Contrary to the district court's conclusion, counsel for appellants did not violate the rule by filing an opposition to the summary judgment motion instead of abandoning his clients' case.
 
 
 44
 The district court imposed sanctions because it found that the opposition to the summary judgment motion was entirely without merit. However, appellants' securities fraud claims based on the formation of the partnerships were not factually unfounded. Contrary to the district court's assertion that appellants "completely failed to provide evidence" of fraud, appellants did introduce evidence on this point. Appellants introduced the declarations of three certified public accountants to support their allegations of fraud. That the district court held this evidence to be insufficient for purposes of summary judgment does not mean that appellants' claims were factually unfounded for purposes of Rule 11. See Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 124 (8th Cir.1987).
 
 
 45
 The district court's failure to acknowledge this supporting evidence led it to impose an erroneous award of Rule 11 sanctions. We recently held in another context that a district court may impose sanctions for a pleading despite the presence of one or more non-frivolous claims. Townsend v. Holman Consulting Corp., 914 F.2d 1136 (9th Cir.1990) (en banc). However, we also held that the district court may consider only sanctionable conduct in setting the amount of sanctions. Id., at 1145; see also In re Yagman v. Baden, 796 F.2d 1165, 1184-85 (9th Cir.1986). Here, the district court erroneously concluded that the appellants' entire filing was frivolous. It sanctioned counsel for opposing a summary judgment motion he was entitled to oppose. Because the opposition actually contained non-frivolous securities fraud claims, the award of sanctions was based on an erroneous legal premise and cannot stand.
 
 
 46
 There is, however, a more important reason to reverse the sanctions in this case. In considering counsel's conduct, we must bear in mind that, at the summary judgment stage of the proceedings, counsel may have legitimate cause for concern that he will be subject to sanctions or discipline if he fails or refuses to oppose a summary judgment motion. In the particular case before us, from the clients' standpoint a great deal was at stake in this litigation--financially and otherwise. The clients had spent much time and considerable resources in their effort to vindicate their position. They had the right to expect their counsel to assert their position vigorously and not simply to surrender their claims by consenting to judgment in favor of their opponents. Here, as the court acknowledged, the filing of the securities fraud and RICO claims was not unreasonable. Given that fact, a lawyer should not be sanctioned for failing to abandon his client's case at the drop of a summary judgment motion, unless there is no colorable defense to the motion that can be advocated and no possible merit to any argument that can be advanced.
 
 
 47
 Precedents regarding the filing of a frivolous complaint are not necessarily controlling in the case of an opposition to a summary judgment motion. Entirely different considerations apply with respect to the filing of these two wholly different types of papers. Prior to agreeing to file the complaint, counsel has no duty to protect a client's rights or interests by instituting litigation. If he wishes, he can base his determination whether to undertake the litigation primarily on considerations involving his own interests and the professional and economic risks he may be taking by pursuing or not pursuing the potential claims. However, once having initiated litigation and pursued it in the courts, an attorney has assumed duties and obligations toward his client he cannot lightly discharge. Failure to carry out these responsibilities zealously may result in disciplinary proceedings, if not a malpractice suit. At this point, counsel is no longer free to consider his own interests; rather, he must be guided by those of his client.
 
 
 48
 Moreover, the rule's purposes of deterring abusive litigation and "streamlin[ing] the administration and procedure of the federal courts," Townsend, at 1141 (quoting Cooter & Gell v. Hartmarx Corp., --- U.S. ----, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990)), are not at stake to nearly the same degree in the case of the filing of an opposition to a summary judgment motion. The institution of frivolous litigation can have serious effects, financial and otherwise, on defendants who have no reason to be involved in the action. The prospect of facing years of costly and unwarranted litigation can, in some circumstances, be devastating to a wholly innocent party. Frivolous litigation also needlessly crowds the courts' dockets and requires the wasted expenditure of valuable judicial resources. However, the filing of an opposition to a summary judgment motion has no such drastic consequences, either for the adverse litigant or the court. By the time a summary judgment motion is made, the record is sufficient for a court to determine frivolity on the basis of what appears before it, including the papers and documents relied on by the moving party. If the opposition is truly frivolous, the district judge can readily grant judgment for the movant, with or without a hearing. Moreover, in almost all cases, the movant will have little if anything further to do as a result of the filing of the frivolous opposition. All or virtually all of the necessary work will have already been performed in connection with the preparation of the motion and the supporting papers. Thus, the filing of an opposition neither interferes significantly with the efficient operation of the courts nor causes an innocent party to suffer more than minimal inconvenience.[18]
 
 
 49
 The differences between the filing of an opposition to a motion for summary judgment and the filing of a complaint provide a persuasive rationale for treating the two actions differently for purposes of Rule 11. Although we have recently held that frivolous claims cannot find a "safe harbor" in a complaint merely because the complaint also contains non-frivolous claims, Townsend, at 1141, we need not be concerned about safe harbors here. The frivolous part of an opposition to a summary judgment motion does not in any way pose the same type of threat to the moving party that a frivolous claim in a complaint poses to an innocent defendant. Therefore, it is appropriate to evaluate such opposition papers under a different standard than we use for papers filed at the outset of the litigation.
 
 
 50
 We conclude that when a lawyer is justified in filing an opposition to a summary judgment motion, his contemporaneous failure to drop a portion of his claim does not warrant the imposition of Rule 11 sanctions. We hold that, in evaluating the opposition to a motion for summary judgment for purposes of Rule 11, the district court must consider the filing as a whole. Sanctions are not appropriate where, as here, counsel opposes a summary judgment motion and: (1) there is a non-frivolous basis for opposing the motion, and (2) the non-frivolous basis constitutes more than an incidental part of the opposition. Under these circumstances, the opposition as a whole is not frivolous. Accordingly, we reverse the district court's order imposing sanctions.
 
 B. Fees Under the Partnership Agreements
 
 51
 The district court found that appellees were not entitled to attorneys' fees based on the limited partnership agreements at issue because "the federal claims on which [appellees] prevailed were not sufficiently tied to the partnership agreements to warrant the award of fees under the contractual provision for attorneys' fees." We hold that the district court erred in refusing to enforce the contractual provision for attorneys' fees contained in one of the limited partnership agreements. We reverse and remand on this issue so that the district court can determine the appropriate amount of fees and expenses.
 
 
 52
 According to appellees, ten of the limited partnerships named as defendants have in their agreements contractual provisions which allow the prevailing party to recover reasonable attorneys' fees. There are two types of attorneys' fee provisions at issue. The first type is identical or substantially equivalent to the following:
 
 
 53
 In the event any litigation is commenced to enforce this agreement, the parties hereto agree that the prevailing party in such litigation shall be entitled to reasonable attorney's fees and other costs and expenses, to be fixed by the court as part of the costs of said action, whether such litigation proceeds to judgment or not.
 
 
 54
 Appellees cannot recover attorneys' fees or costs under this provision because appellants brought this action not to "enforce" the limited partnership agreements but rather to collect damages based on the allegedly fraudulent conduct of Dale in connection with the partnerships' formation and operation or, alternatively, to rescind or reform the partnership agreements.
 
 
 55
 Appellees, however, assert that they are also entitled to recover attorneys' fees and expenses under the second type of provision, which is contained in only one of the limited partnership agreements. The limited partnership agreement for Ontario Mobile, Ltd. ("Ontario") contains the following provision:
 
 
 56
 14.04. Attorney's Fees. In any action between the parties to enforce any of the terms of this Agreement or of any other contract relating to the Partnership, or an action in any other way pertaining to Partnership affairs or this Agreement, the prevailing party shall be entitled to recover expenses, including reasonable attorney's fees.
 
 
 57
 This provision plainly authorizes the recovery, by appellees who are parties to the Agreement, of expenses incurred in defending those aspects of this action relating to Ontario. See Koehler v. Pulvers, 614 F.Supp. 829, 852-53 (S.D.Cal.1985).
 
 
 58
 Both sides agree that Carol E. Williams and Gloria Hechman are the only appellants who are signatories to the Ontario agreement. Therefore, these two appellants are liable for fees and expenses under section 14.04 of the Ontario agreement. See Koehler, 614 F.Supp. at 852-53.[19]
 
 
 59
 On remand, therefore, the district court shall determine the amount of expenses to be paid by Carol E. Williams and Gloria Hechman to those appellees who are parties to the Ontario agreement for the costs they incurred in litigating the claims brought against the Ontario limited partnership. In order to make this determination, the district court will have to decide what part of the attorney fees incurred in this action were attributable to the litigation arising out of the Ontario agreement.
 
 C. Fees Under the 1933 Securities Act
 
 60
 The district court declined to award attorneys' fees under section 11(e) of the Securities Act of 1933, 15 U.S.C. Sec. 77k(e).[20] Appellees now argue that they are entitled to recover attorneys' fees under this provision.
 
 
 61
 Under section 11(e) of the 1933 Act, the district court "may, in its discretion," allow fee awards if it "believes the suit or the defense to have been without merit...." 15 U.S.C. Sec. 77k(e); Western Federal Corp. v. Erickson, 739 F.2d 1439, 1444 (9th Cir.1984). We have stated that fees "may be awarded under section 11(e) only if the claim or defense borders on the frivolous or is brought in bad faith." Id. In Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 n. 8 (9th Cir.1986), we stated that the standard applied in Rule 11 sanctions cases was the same as that applied to the award of fees under section 11(e) of the 1933 Securities Act. Thus, the district court's finding that appellants' assertion of RICO and securities fraud claims in their opposition to the summary judgment motion warranted imposition of Rule 11 sanctions implies that appellants' conduct also met the standard for a fee award under section 11(e).
 
 
 62
 Nonetheless, we hold that the district court acted within its discretion in declining to award fees under section 11(e). Section 11(e) provides only that the district court "may" award fees, not that it must. The statutory language leaves the district courts broad discretion to consider and balance the relevant facts and policies. We will not disturb the district court's exercise of discretion unless we have a definite and firm conviction that the court committed a clear error of judgment in the conclusion it reached after a weighing of the relevant factors. Fjelstad v. American Honda Motor Co., Inc., 762 F.2d 1334, 1337 (9th Cir.1985). Because we do not believe that the district court committed an error of judgment in reaching its conclusion, we affirm its decision not to award fees under section 11(e).
 
 
 63
 D. Fees Under the District Court's Equitable Powers
 
 
 64
 The district court declined to invoke its equitable powers as the basis for a fee award to appellees. Appellees contend that the district court should have awarded them attorneys' fees under the court's equitable powers because appellants brought and maintained this action in subjective bad faith and because their conduct during the course of the litigation was vexatious, wanton, and oppressive.
 
 
 65
 The imposition of sanctions under the inherent power of the court is proper where counsel has willfully abused the judicial process or otherwise conducted litigation in bad faith. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 765-66, 100 S.Ct. 2455, 2463-64, 65 L.Ed.2d 488 (1980); In re Itel Securities Litigation, 791 F.2d 672, 675 (9th Cir.1986), cert. denied, 479 U.S. 1033, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987); Toombs v. Leone, 777 F.2d 465, 471 (9th Cir.1985). An award of attorneys' fees for bad faith is within the district court's discretion. Dogherra v. Safeway Stores, Inc., 679 F.2d 1293, 1298 (9th Cir.1982), cert. denied, 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982). We hold that the district court acted within its discretion in refusing to award attorneys' fees pursuant to its equitable powers. See Fjelstad v. American Honda Motor Co., Inc., 762 F.2d 1334, 1337 (9th Cir.1985).
 
 
 66
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 
 67
 The parties shall bear their own costs in these appeals.
 
 
 
 [1]
 Having disposed of the federal claims, the court also dismissed, without prejudice, appellants' pendent state law claims
 
 
 [2]
 Appellants are family members and relatives of Dale
 
 
 [3]
 On appeal, appellants disclaim any attempt to assert a separate cause of action for securities registration violations in their First Amended Complaint. According to appellants, all references to such alleged violations were made merely for the purpose of establishing predicate acts in support of appellants' RICO and securities fraud claims. However, the manner in which appellants pleaded "Federal Securities Violations" in the first count of their First Amended Complaint, with several assertions of violations of the registration requirements, suggested that appellees would be required to litigate this issue in the course of defending the action. Indeed, during the course of this litigation and appeal the parties frequently addressed the registration issue. Therefore, we address the merits of the district court's decision to grant summary judgment on what it construed as appellants' federal securities registration claims
 
 
 [4]
 The court also stated that most of the limited partnerships involved in the litigation were exempt from federal securities registration requirements under section 3(a)(11) of the 1933 Act, which exempts securities "offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within ... such State or Territory." 15 U.S.C. Sec. 77c(a)(11)
 
 
 [5]
 Appellants contend that certain post-1979 transactions constituted "forced sales" of securities and that the statute of limitations did not begin to run until the time of these transactions. We address, and reject, this contention in our discussion of appellants' securities fraud claims. See infra IB
 
 
 [6]
 The court also held that appellants had "completely failed to provide evidence that Dale had the 'intent to deceive, manipulate, or defraud' his family in the original partnership agreements," quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). Nor, the court held, was there "evidence of recklessness in the formation of the partnership agreements." Because scienter is a required element of securities fraud, the court implied, appellants could not have prevailed on this issue even if their claims had been timely brought
 
 
 [7]
 Appellants merely assert that the K-1 returns "distort the monies actually received [by appellants] and the capital contribution of each limited partner and the lack of capital contribution by [Dale]."
 
 
 [8]
 Because we hold that there was no "fraudulent concealment" past 1979, we need not decide whether appellants exercised "due diligence" in uncovering the alleged fraud. See N.L.R.B. v. Don Burgess Constr. Corp., 596 F.2d 378, 383 (9th Cir.1979), cert. denied, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979). Accordingly, we need not address appellants' contention that Dale's fiduciary obligations toward appellees lessened the amount of "diligence" appellants were required to exercise in monitoring the partnerships in order to invoke equitable estoppel to toll the statute of limitations
 
 
 [9]
 Brook Meadows was never "spun off" from Agean
 
 
 [10]
 Appellants contend that they are unable to frame the necessary allegations because Dale improperly commingled the funds of the various limited partnerships. However, even if Dale used funds from the refinance of Southwind to provide Agean with additional capital, the result would not constitute a "capital contribution" by Carol. See Goodman v. Epstein, 582 F.2d 388, 414 (7th Cir.1978), cert. denied, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979)
 
 
 [11]
 Appellants assert that they presented evidence of refinances of properties other than Southwind to the district court. However, appellants have offered no evidence showing that the facts surrounding these alleged transactions differed in any relevant respect from those of the Southwind refinance
 
 
 [12]
 Appellants' assertions concerning discovery challenge not only the propriety of the district court's disposal of their RICO claims by summary judgment, but all rulings that are the subject of this appeal. For the sake of convenience, we address the discovery issue here
 
 
 [13]
 Appellants' reference to their inability to complete any "discovery" is misleading. The discovery order and the appellants' own briefs establish that appellants in fact had access to and photocopied documents produced by appellees
 
 
 [14]
 Appellants argue that their opportunity to depose Dale was "truncated" because appellants' lead counsel suffered injuries which were exacerbated during Dale's deposition. According to appellants, "[c]ounsel for plaintiffs is comprised of a small office, where no one but lead counsel had the factual knowledge or legal expertise to conduct the substantive depositions of defendants." These asserted circumstances do not, in the context of this case, demonstrate that the district court unfairly deprived appellants of the opportunity to conduct depositions
 
 
 [15]
 The district court did not make an explicit ruling on appellants' Rule 56(f) motion. Instead, the court stated in its order granting summary judgment that appellants had had "unrestricted access to defendants' books and records." While it would have been preferable for the district court to rule expressly on the Rule 56(f) motion, we hold that the district court did not abuse its discretion in only indirectly addressing the merits of the motion. Moreover, because we agree that appellants had sufficient opportunity to conduct discovery, we hold that appellants suffered no prejudice from the district court's failure to rule explicitly on the motion
 
 
 [16]
 Having concluded that the district court correctly granted summary judgment on all federal claims, we need not decide whether the court, as appellants argue, improperly dismissed certain defendants. Nor, for the same reason, need we decide whether the district court improperly expunged lis pendens obtained by appellants. Finally, we need not decide whether the district court improperly enjoined counsel for appellants from proceeding in various state court actions. The injunction remained in force only for so long as the district court had jurisdiction over the merits of this action. Therefore, because the district court no longer has jurisdiction over the merits of this action, the injunction is lifted and appellants' appeal of its imposition is moot
 
 
 [17]
 Rule 11 provides, in pertinent part:
 The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the persons who signed it, represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 Fed.R.Civ.P. 11.
 
 
 [18]
 Even if sanctions would be appropriate in a particular case, the amount would in all likelihood be minimal. The language of Rule 11 makes clear that the extent of sanctions is defined by the harm caused by the filing of the sanctionable paper. See Fed.R.Civ.P. 11 (sanctions may include the "reasonable expense [ ] incurred because of the filing of the pleading, motion, or other paper") (emphasis added); Cooter & Gell v. Hartmarz Corp., --- U.S. ----, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990) ("We believe Rule 11 is more sensibly understood as permitting an award only of those expenses directly caused by the filing....") (emphasis added). For the reasons we have expressed above, the filing of an opposition to a motion for summary judgment typically has only an extremely limited impact on the adverse party and the court, and thus only insubstantial sanctions could be imposed
 
 
 [19]
 Appellants argue that they should not be liable for fees and expenses under the Ontario agreement because "the transactions relative to it formed only a minimal part of the underlying transactions in the first amended complaint," and because "the district court's summary judgment order makes no mention whatsoever of the ... Ontario partnership[ ]...." These facts are irrelevant. Appellants, in bringing this action, chose to name Ontario a defendant and stated claims based on its alleged activities. The district court's order granting summary judgment adjudicated these claims against appellants. The appellants who are parties to the Ontario agreement are therefore bound by its contractual attorneys' fees provision
 
 
 [20]
 The district court stated that, because "the legal standard for fee awards under Rule 11 is the same as that applied under the Securities Act of 1933," it would "limit[ ] its analysis to the appropriateness of sanctions under Rule 11," citing Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 n. 8 (9th Cir.1986)