113 F.3d 1241
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
George LAYMAN, Plaintiff,
and
Calvin Klein; Barry K. Schwartz, d/b/a Barry K. Schwartz
Partnership, a New York general partnership; Earl
H. Schultz; Kenneth Franzheim, II,
Plaintiffs-Appellees,
v.
Frank L. BRYANT, Defendant-Appellant.
Richard D. SCHULTZ, Plaintiff-Appellant,
v.
Bateman EICHLER, Hill Richards, Inc.; Charles R. Hembree;
Kincaid, Wilson, Schaeffer & Hembree,
Defendants-Appellees.
Richard D. SCHULTZ, Plaintiff-Appellant,
v.
Bateman EICHLER, Hill Richards, Inc.; Charles R. Hembree;
Kincaid, Wilson, Schaeffer & Hembree,
Defendants-Appellees.
Richard D. SCHULTZ, Plaintiff-Appellant,
v.
Roger SULLIVAN, Defendant-Appellee.
Blas R. CASARES, Plaintiff-Appellant,
v.
Charles R. HEMBREE; Kincaid, Wilson, Schaeffer & Hembree*;
Kemper Securities; Roger
Sullivan, Defendants-Appellees.
Barry K. SCHWARTZ, d/b/a Barry K. Schwartz Partnership, a
New York general partnership; Calvin Klein; Zenya Yoshida;
Kazuko Yoshida; Robert D. Stratmore; Katsumi Yoshida;
Earl H. Schultz; Teruya Yoshida; Kenneth Franzheim, II;
Haruya Yoshida, Plaintiffs-Appellees,
and
George E. Layman, Plaintiff,
v.
Frank L. BRYANT, Defendant-Appellant.
 Nos. 94-16391, 94-17067, 94-17070, 95-15343, 95-15344 and 97-15340.
 United States Court of Appeals, Ninth Circuit.
 Argued July 9, 1996.
Submitted March 7, 1996.
Decided May 7, 1997.
 
 Appeals from the United States District Court for the Northern District of California, Nos. CV-86-01692-CAL, CV-88-03175, CV-87-06038-CAL, CV-87-01129-CAL; Charles A. Legge, District Judge, Presiding.
 N.D.Cal. [Appealing after remand from 994 F.2d 1344].
 AFFIRMED IN PART, REVERSED IN PART.
 Before: CHOY, O'SCANNLAIN and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Defendant-appellant Roger L. Sullivan, executor of the estate of Frank L. Bryant (collectively "Bryant"), appeals from the district court's denial of his request for attorneys' fees pursuant to § 11(e) of the 1933 Securities Act, 15 U.S.C. § 77k(e). Plaintiffs-appellants Blas Casares and Richard D. Schultz appeal from the district court's grant of attorneys' fees in favor of defendants-appellees Bryant, Kemper Securities, Inc. ("Kemper"), Charles R. Hembree, and Kincaid, Wilson Schaeffer & Hembree, P.C.S. ("Kincaid"), pursuant to Florida and Ohio fee shifting statutes. We affirm in part, reverse in part, and remand.
 
 
 3
 I. Bryant's appeal.
 
 
 4
 Bryant appeals the denial of § 11(e) attorneys' fees from those plaintiffs who never communicated with him before investing, i.e. Calvin Klein and his partner Barry K. Schwartz d.b.a. Barry K. Schwartz Partnership, Kenneth Franzheim II, Zenya Yoshida d.b.a. Shadai Farms, Earl H. Schultz, Robert D. Stratmore, and Richard D. Schultz (collectively the "Klein appellees").
 
 
 5
 A. Is this appeal timely?
 
 
 6
 The Federal Rules of Appellate Procedure require that a party file a notice of appeal "within 30 days after the date of entry of the judgment or order appealed from." Fed.R.App.P. 4(a)(1). Bryant's notice of appeal was filed more than thirty days after the order denying Bryant's motion for attorneys' fees against appellees Schultz, Barry K. Schwartz Partnership, Franzheim and Yoshida. The Klein appellees argue that therefore the appeal is not timely as to that set of appellees.
 
 
 7
 However, appeal is permitted under 28 U.S.C. § 1291 "only when there is a final judgment that resolves all of the consolidated actions unless a [Rule] 54(b) certification is entered by the district court." Huene v. United States, 743 F.2d 703, 705 (9th Cir.1984). The final orders in Stratmore v. Combs and Central Bank & Trust Co. v. McGonigle were not filed until November 22, 1996. Bryant filed a notice of appeal within thirty days--on December 18, 1996. Because the Stratmore and McGonigle cases were consolidated for trial with other cases herein appealed, under Huene Bryant could not appeal until November 22, 1996. The thirty-day clock did not start until then. Bryant's appeals are therefore timely.
 
 
 8
 B. Did the district court act within its discretion in declining to award Bryant attorneys' fees under § 11(e)?
 
 
 9
 1. Standard of review.
 
 
 10
 District courts may award attorneys' fees under § 11(e) for claims which "bordered on the frivolous." Layman v. Combs, 994 F.2d 1344, 1353 (9th Cir.1992), cert. denied, 114 S.Ct. 303 (1993).
 
 
 11
 This court reviews the district court's decision not to award attorneys' fees under § 11(e) for abuse of discretion:
 
 
 12
 The statutory language leaves the district court broad discretion to consider and balance the relevant facts and policies. We will not disturb the district court's exercise of discretion unless we have a definite and firm conviction that the court committed a clear error of judgment in the conclusion it reached after a weighing of the relevant factors.
 
 
 13
 Stitt v. Williams, 919 F.2d 516, 531 (9th Cir.1990).
 
 
 14
 2. The § 12 claims.
 
 
 15
 On June 15, 1988, the U.S. Supreme Court defined "seller" for purposes of § 12(1) in Pinter v. Dahl, 486 U.S. 622 (1988). The Court rejected the Ninth Circuit's "substantial factor" test and defined seller as one who "successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." Id. at 647. In September 1988 Bryant moved for summary judgment on the § 12 claims, which the district court granted in December 1988, ruling that Bryant was not a "seller" under the new Pinter standard.
 
 
 16
 Under the pre-Pinter standard for "seller," "[t]he test is whether the injury to the plaintiff flowed directly and proximately from the actions of the defendant." SEC v. Seaboard Corp., 677 F.2d 1289, 1294 (9th Cir.1982). A defendant's actions must be "both necessary to and a substantial factor in the sales transaction." SEC v. Murphy, 626 F2d 633, 650 (9th Cir.1980).
 
 
 17
 Under either standard, Bryant was clearly not a seller for purposes of § 12. Bryant never spoke to any of the Klein appellees before they invested; nor did he draft the private placement memorandum or its supplement. He had no effect on their investment decisions. It is thus impossible to argue that he was "both necessary and a substantial factor in the sales transaction," or that he "successfully solicited" the purchases in any way. The § 12 claims against Bryant bordered on the frivolous; the district court abused its discretion in denying attorneys' fees to Bryant. We thus remand for the district court to issue an appropriate award of attorneys' fees to Bryant.
 
 
 18
 3. The § 17 claims.
 
 
 19
 In July 1987 this court announced that it no longer recognized a private right of action under § 17(a). In re Washington Pub. Power Supply Sys. Sec. Litig. (WPPSS ), 823 F.2d 1349, 1358 (9th Cir.1987). Since the Klein appellees consented to the dismissal of their § 17 claims as soon as WPPSS rendered them meritless, the district court did not abuse its discretion in denying attorneys' fees as to these claims.
 
 
 20
 II. Appeals of Casares and Schultz.
 
 
 21
 The district court granted attorneys' fees from Casares and Schultz to Bryant, Kemper and Hembree under the Florida and Ohio fee-shifting statutes. Fla.Stat.Ann. § 517.211(6); Ohio Rev.Code § 2923.34(G) & (H). The district court ordered Casares and Schultz to pay five percent of appellees' total legal fees, which amounted to awards ranging from approximately $35,000 to $80,000. We reversed and remanded for the district court to recalculate the attorneys' fees. Schultz, 975 F.2d at 577 (9th Cir.1992). On remand, the district ordered Casares to pay Hembree approximately $1.7 million, Kemper approximately $800,000, and Bryant approximately $1.2 million. The district court ordered Schultz to pay Hembree approximately $1.9 million, Kemper approximately $1 million, and Bryant approximately $1.1 million. The district court also awarded supplemental fees and costs incurred in connection with the first appeal and proceedings on remand.
 
 
 22
 A. Standard of Review.
 
 
 23
 This court reviews awards of attorneys' fees for abuse of discretion. Layman, 994 F.2d at 1353 n. 6. "However, a district court abuses its discretion if it rests its conclusion on an erroneous legal premise, and questions of law are reviewed de novo." Id. (quoting FSLIC v. Sahni, 868 F.2d 1096, 1097 (9th Cir.1989)).
 
 
 24
 B. The district court correctly applied Schultz v. Hembree.
 
 
 25
 In Schultz v. Hembree, this court reversed the district court's award of attorneys' fees, and remanded for the district court to recalculate fees using the stand-alone approach:
 
 
 26
 We hold that the prevailing party may recover that amount in fees it would have incurred had the shifting claims been litigated by themselves. This amount may well differ from the amount actually expended in advancing (or defending against) the claim in the context of the multiple-claim litigation. It might be less, if the parties would have litigated the shifting claims less vigorously, or compromised them early in the litigation. Or it might be more, as the parties may have devoted more resources to the shifting claims had they not been distracted by others. In any event, this method avoids both overcompensating and undercompensating the prevailing party, because the fees award is pegged precisely to the claim under which it is authorized.
 
 
 27
 975 F.2d at 577.
 
 
 28
 Casares and Schultz argue that the district court failed correctly to apply this methodology. First, they argue that the district court erred in not requiring appellees to present new evidence of what attorneys' fees would have been in a hypothetical stand-alone case. This argument lacks merit. The evidence of what fees actually were expended is the best evidence of what fees would have been in a hypothetical stand-alone case. The district court and appellees took the actual fees expended on the shifting claims, and then adjusted them to account for how the litigation would have differed in a stand-alone case. For instance, the district court added $240,000 in fees regarding insurance litigation that would have been incurred in a stand-alone Ohio RICO claim. Moreover, neither Casares nor Schultz suggested any contrary methodology or evidence.
 
 
 29
 Second, Schultz argues that the district court refused to consider what course the litigation would have taken had the Ohio RICO claim been litigated alone. Before the district court, Schultz argued that (1) given the weakness of his claim, appellees would have defeated the claim with only $2000 of legal work from each appellant, and (2) appellees would have settled the claim before expending the $4.1 million in legal fees they were ultimately awarded. The district court, however, did not refuse to consider these arguments. Instead, the district court found that factually it was not credible that the claim would have been dismissed after only $2000 in legal work. Likewise, the district court noted several reasons why the appellees would not have settled so early. Not only did the appellees face millions in direct claims, and the possibility of being collaterally estopped in future litigation against the purchasers of the public offering; they also faced the damage to their professional reputations which any settlement would have brought.
 
 
 30
 Schultz and Casares also argue that appellees failed to differentiate between shifting and non-shifting claims and between the Ohio and Florida shifting claims. This argument is incorrect. All three appellees did distinguish between shifting and non-shifting claims, and between Ohio and Florida shifting claims. Kemper and Bryant went through their fees line-by-line and identified each entry as work that would have been performed (1) in a stand-alone Ohio RICO case; (2) in a stand-alone Florida blue-sky case; (3) in both cases; or (4) in neither case. Hembree used a slightly different methodology. He divided the litigation into five phases, and for each phase he decided what percentage of the fees expended would have been expended in a stand-alone Ohio RICO or Florida blue-sky claim. Both methodologies differentiate between the claims. If Casares or Schultz disagreed with the allocation among the claims, they should have raised these problems below, which they did not.
 
 
 31
 Schultz's only compelling argument is that he should not pay the costs associated with the statute of limitation defense, since that defense did not apply to his Ohio RICO claim. He raised this argument in his motion for reconsideration, which the district court denied. An argument is not waived if it is raised for the first time in a motion for reconsideration. Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 515 (9th Cir.1992). Schultz argues that his Ohio RICO claim presented no statute of limitation issue. The Ohio RICO statute has a five-year limitation period. Ohio Rev.Code § 2923.34(K). Schultz's second complaint was filed on March 8, 1988, less than five years from the date on which he invested. We remand for the district court to determine whether the statute of limitation defense applied to Schultz's claim, and if not, to recalculate the fee award against Schultz accordingly.
 
 
 32
 C. The district court did not err in failing to explain the reasonableness or justness of the fee award.
 
 
 33
 Schultz v. Hembree requires the district court to "provide a clear and concise explanation of its decision, which will inform the parties--and this court, if necessary--of the basis for and reasonableness of the fee award." 975 F.2d at 577. Casares and Schultz argue that the district court failed to explain the reasonableness of the fee award. In fact, the district court made explicit findings that the methods of allocation and computations of Hembree, Kemper and Bryant were reasonable. Furthermore, this court in Schultz noted that Casares and Schultz did not challenge the district court's earlier finding that the amounts the defendants expended in attorneys' fees were reasonable. Id. at 575.
 
 
 34
 Casares and Schultz also argue that the district court erred in not making a new finding of justness. Such a finding, however, was not required by Schultz, which is the law of the case. Schultz required that the district court follow the stand-alone methodology, and then explain why the result was reasonable, which the district court did. Indeed, Schultz specifically noted that the issue of justness had already been decided and not appealed, and was not subject to further review: "Casares made no showing that an award of fees would be 'unjust,' nor could he.... Schultz makes no claim that such an award would be unjust." Id. at 575 and n. 3. Under Schultz, the district court did not need to make an explicit determination of justness.
 
 
 35
 D. The district court did not abuse its discretion in denying discovery.
 
 
 36
 Casares and Schultz argue that the district court abused its discretion in denying their request for discovery. It appears, however, that Casares and Schultz never properly requested discovery. The district court noted that although Casares and Schultz "said in their briefs they would like some discovery," they requested no "specific" discovery. "Unfocused requests to initiate discovery without indicating its nature or extent serve no purpose, and the District Court has full discretion to deny such requests." National Ass'n of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, 1329 (D.C.Cir.1982).
 
 
 37
 Moreover, the district court would have had discretion to deny the request even had it been properly made. "Broad discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." Sablan v. Department of Fin. of N. Mariana Islands, 856 F.2d 1317, 1321 (9th Cir.1988) (citations omitted). Since Casares and Schultz have still not specifically identified what they desire discovery of, i.e. what gaps in the record they believe that discovery could fill, the district court did not abuse its discretion in denying discovery.
 
 Conclusion
 
 38
 We REVERSE the district court's denial of attorneys' fees to Bryant under § 11(e), and REMAND for the district court to issue an appropriate award of attorneys' fees. We AFFIRM the district court's award of attorneys' fees to Bryant, Hembree and Kemper against Casares and Schultz, except we REMAND for the district court to determine whether the statute of limitation defense would have applied to Schultz's stand-alone claim, and if not, to recalculate the attorneys' fee award against Schultz accordingly.
 
 
 
 *
 Judgment Acquisition Corporation was substituted for Charles R. Hembree and Kincaid, Wilson, Schaeffer & Hembree
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3