Oscar SOCOP–GONZALEZ, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent,

No. 98–70782.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 2000

Opinion Filed March 27, 2000

Rehearing En Banc Granted Sept. 29, 2000

Argued and Submitted Dec. 20, 2000

Filed Dec. 5, 2001

Robert B. Jobe, San Francisco, California, for the petitioner.

David W. Odgen, Assistant Attorney General, Civil Division, Washington, D.C. (argued), and Hugh G. Mullane, Senior Litigation Counsel, Civil Division, Washington, D.C. (brief), for the respondent.

Before: SCHROEDER, Chief Judge, and PREGERSON, REINHARDT, O'SCANNLAIN, HAWKINS, TASHIMA, SILVERMAN, McKEOWN, WARDLAW, PAEZ, and BERZON, Circuit Judges.

Opinion by Judge PREGERSON:
Dissent by Judge O'SCANNLAIN

PREGERSON, Circuit Judge:

Before appealing to a circuit court, an alien may seek relief from a decision of the Board of Immigration Appeals ("BIA") by filing a motion to reopen his or her deportation proceedings.[1] 8 C.F.R. § 3.2(a). The purpose of a motion to reopen is to present new facts or evidence that may entitle the alien to relief from deportation. INA § 240(c)(6)(B), 8 U.S.C. § 1229a(c)(6)(B); 8 C.F.R. § 3.2(c)(1). An alien may use a motion to reopen to challenge the finding of deportability itself, or to show that the alien is newly eligible for relief from deportation. Iris Gomez, *The Consequences of Nonappearance: Interpreting New Section 242B of the Immigration and Nationality Act,* 30 San Diego L.Rev. 75, 117–18 (1993).[2]

In 1996, the Department of Justice promulgated regulations restricting an alien

---

1. An alien may seek relief from a decision of an Immigration Judge by filing a motion to reopen. 8 C.F.R. § 3.23(b)(3).

2. An alien may also seek relief from a decision of an IJ or the BIA by filing a motion to reconsider. The purpose of a motion to reconsider is not to raise *new* facts, but rather

to demonstrate that the IJ or the BIA erred as a matter of law or fact. INA § 240(c)(5)(C), 8 U.S.C. § 1229a(c)(5)(C); 8 C.F.R. § 3.2(b)(1) (governing motions to reconsider before the BIA); 8 C.F.R. § 3.23(b)(2) (governing motions to reconsider before the IJ). An alien must file a motion to reconsider within thirty days of the IJ's or the BIA's decision. INA

to one motion to reopen, and requiring the motion to be filed within ninety days of the BIA's decision. 8 C.F.R. § 3.2(c)(2). In this appeal, we reaffirm our prior holding that this ninety-day filing period is subject to equitable tolling. *See Varela v. INS,* 204 F.3d 1237, 1240 (9th Cir.2000). We also conclude that the circumstances presented by the petitioner's case warrant equitable tolling. Accordingly, we grant the petition for review, reverse the denial of the motion to reopen, and remand to the BIA.

# I.

## FACTS AND PROCEDURAL HISTORY

In November 1991, Oscar A. Socop–Gonzalez ("Socop"), a native and citizen of Guatemala, entered the United States as a nonimmigrant visitor. He was authorized to remain until May 26, 1992, but remained beyond that date without authorization from the INS. On September 5, 1995, Socop filed an application for asylum and withholding of deportation. On October 19, 1995, the INS initiated deportation proceedings against Socop by issuing an Order to Show Cause that charged him with overstaying his visa in violation of § 241(a)(2) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(2).[3] At a hearing held before an Immigration Judge ("IJ"), Socop conceded that he was deportable as charged, but requested asylum, withholding of deportation, and alternatively, voluntary departure. On April 4, 1996, the IJ denied all requested relief and ordered Socop deported. Six days later, Socop filed a timely appeal with the BIA. Socop was represented by an attorney at the deportation hearing, but filed the appeal *pro se.*

On March 30, 1997, while his asylum appeal to the BIA was pending, Socop married Sandra Haydee Burbano, a United States citizen. On April 7, 1997, Socop went to the INS office in Westminster, California to inquire about how to submit a petition to immigrate based on his marriage. The INS officer staffing the information booth instructed Socop to withdraw his asylum appeal and to file an application for adjustment of status with the INS. Socop followed these instructions: that very day, he sent a letter to the BIA withdrawing his appeal. In his letter, he explained that he was withdrawing his appeal because he "got married to an American citizen and [was] going to file for my adjustment of status [through] marriage." On April 23, 1997, Socop filed an immediate relative petition, an application for adjustment of status, and an application for employment authorization with the INS.

Unfortunately, the INS officer provided incorrect advice to Socop. When the BIA received Socop's letter withdrawing his appeal, it issued an order dated May 5, 1997 returning the case to the Immigration Court without further action. This order constituted a final administrative decision in Socop's asylum case, which made Socop's April 4, 1996 deportation order immediately effective. Instead of instructing Socop to withdraw his asylum petition, the INS officer should have told Socop to file an immediate relative visa petition with the INS and wait until it was approved. Assuming the INS approved his visa petition (it in fact did so on April 7, 1998), Socop then should have filed a motion to reopen (styled as a motion to remand) with the BIA, accompanied by a completed application for adjustment of status and his approved visa petition. *See* 8 C.F.R. § 3.2(c)(4) (providing that motion to re-

---

§ 240(c)(5)(B), 8 U.S.C. § 1229a(c)(5)(B); 8 C.F.R. § 3.2(b)(2); 8 C.F.R. § 3.23(b)(1).

**3.** The overstay provision has since been recodified at INA § 237(a)(1)(C)(i), 8 U.S.C. § 1227(a)(1)(C)(i).

open while appeal is pending before the BIA "may be deemed a motion to remand for further proceedings before the Immigration Judge"); 8 C.F.R. § 3.2(c)(1) (providing that motion to reopen on basis of new eligibility for relief from deportation "must be accompanied by the appropriate application for relief and all supporting documentation").

■ The BIA may grant a motion to remand before it has rendered a final decision in a given case. *In re Yewondwosen,* 21 I. & N. Dec. 1025 (1997). Therefore, had Socop's visa petition been approved before the BIA rendered its decision in his asylum appeal, the BIA could have granted his motion to remand. Even if the BIA had rendered a final decision in Socop's case before his visa petition had been approved, Socop still would still have had ninety days in which to file a supported motion to reopen. *See* 8 C.F.R. § 3.2(c)(2); *In re H–A–,* Interim Dec. 3394, 1999 WL 325675 (BIA 1999) (holding that alien whose deportation proceedings have closed may still move to reopen to adjust status so long as visa petition is approved within ninety days of final deportation order). By following the INS officer's advice to withdraw his appeal, however, Socop unwittingly triggered his own immediate deportation and, absent a successful motion to reopen, lost *any* chance he might have had to adjust his status on the basis of his marriage.

On July 2, 1997, the INS sent Socop a "Bag and Baggage" letter instructing him to report for deportation on August 11, 1997. This letter, which Socop received on July 7, 1997, alerted him for the first time that there was a problem with his attempt to adjust his status.

At the same time that the INS was attempting to deport Socop, it also started to process his application for adjustment of status. On July 12, 1997, ten days after the INS sent Socop the "Bag and Baggage" letter, it sent him a letter instructing him to report to the INS to receive his employment authorization card. On July 14, 1997, Socop consulted with a lawyer who prepared and filed a waiver of excludability, presumably to supplement his adjustment of status petition. Two days later, Socop went to the INS and picked up his employment authorization card, which had an expiration date of July 15, 1998.

Concerned that he had not followed the proper procedure to adjust his status, and confused by the conflicting signals he was receiving from the INS, Socop returned to the INS office in Westminster on August 6, 1997. He spoke with the same INS officer with whom he had spoken on his previous visit, and she again told him that in order to adjust his status, he needed to withdraw his asylum appeal with the BIA.

By now Socop was wary of the INS officer's advice. With a lawyer's assistance, on August 11, 1997, Socop moved the BIA to reopen his case and to reinstate his asylum appeal. Socop based his motion to reopen on the ground that he relied to his detriment on the incorrect advice of the INS officer. Socop also urged the BIA to exercise its *sua sponte* power to reopen his case. *See* 8 C.F.R. § 3.2(a) (authorizing BIA to reopen cases on its own motion).

The BIA denied Socop's motion to reopen on two grounds. First, it held that the motion to reopen was untimely because it was not filed within ninety days of the BIA's decision.[4] Second, the BIA held that even if Socop's motion to reopen were timely, the motion should be denied because Socop did not submit an approved

---

**4.** The BIA also held that if Socop's motion were construed as a motion to reconsider, it was untimely because it was not filed within thirty days of the BIA's decision. This aspect of the BIA's decision is not on appeal.

visa petition and an application for adjustment of status at the time he filed his motion to reopen. After denying Socop's motion to reopen, the BIA also declined to exercise its *sua sponte* power to reopen, finding that Socop's case did not present "exceptional circumstances." *See In re J– J–*, 21 I. & N. Dec. 976, 1997 WL 434418 (1997) (establishing "exceptional circumstances" standard for *sua sponte* reopening).

Socop timely appealed the BIA's decision to this court. On appeal, Socop argues that the BIA should have equitably tolled the ninety-day filing period for motions to reopen. Specifically, Socop argues that the period from May 5 (when the BIA returned Socop's case to the Immigration Court) until July 7 (when Socop received the "Bag and Baggage" letter) should be tolled because during this time, despite due diligence, he did not know that the erroneous advice of the INS officer had caused him to follow the wrong procedure and that, as a result, his April 4, 1996 deportation order had become effective. In the alternative, Socop argues that the BIA erred in refusing to exercise its *sua sponte* power to reopen cases that present "exceptional circumstances." Because we hold that the BIA should have equitably tolled the ninety-day filing period, we do not reach the question whether the BIA should have exercised its *sua sponte* power to reopen.

## II.

## JURISDICTION

■ This case is governed by the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") because Socop was placed in deportation proceedings before April 1, 1997 (on October 19, 1995), and his final deportation order became effective after October 30, 1996 (on May 5, 1997). *See* IIRIRA § 309(a), (c)(1); *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997). We have jurisdiction to review the BIA's refusal to reopen deportation proceedings pursuant to the now-repealed INA § 106(a), 8 U.S.C. § 1105a(a), as amended by the transitional rules governing judicial review, which are codified at IIRIRA § 309(c)(4).[5] *See Arrozal v. INS*, 159 F.3d 429, 431–32 (9th Cir.1998) (holding that court of appeals has jurisdiction to review denial of motion to reopen where underlying deportation order issued pursuant to INA § 241(a)(2)).

■ Before reaching the merits of this case, we must first address the INS's contention that we lack jurisdiction to consider Socop's equitable tolling argument because he failed to raise it before the BIA. The INS is correct that if Socop failed to exhaust his administrative remedies with respect to equitable tolling, we lack jurisdiction under the INA to consider the issue on appeal. *See* INA § 106(c), 8 U.S.C. § 1105a(c) (repealed 1996) (mandating exhaustion); *Vargas v. U.S. Dept. of Immigration and Naturalization*, 831 F.2d 906, 907–08 (9th Cir.1987) ("Failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter.") (citations omitted).[6] We hold that even though Socop never specifically in-

---

**5.** IIRIRA replaced the old statutory section governing judicial review of deportation and exclusion orders, INA § 106, 8 U.S.C. § 1105a, with a new section governing judicial review of "removal" orders, INA § 242, 8 U.S.C. § 1252. The new review provision does not apply to cases that are governed by the transitional rules; these cases continue to be governed by INA § 106, as amended by the transitional rules. *See Avetova–Elisseva v. INS*, 213 F.3d 1192, 1195 n. 4 (9th Cir.2000).

**6.** INA 106(c), 8 U.S.C. § 1105a(c), now repealed, states: "An order of deportation . . .

voked the phrase "equitable tolling" in his briefs to the BIA, he sufficiently raised the issue before the BIA to permit us to review the issue on appeal.

Socop submitted an opening and a reply brief to the BIA, as well as a personal declaration. In these documents, Socop set forth in detail the factual background of this case. Socop explained that he was in deportation proceedings, and that after marrying an American citizen, he sought advice from the INS on how to adjust his status. He explained that he received incorrect advice from an INS officer—not once, but twice—that he should withdraw his asylum appeal in order to apply for adjustment of status. Socop detailed how he carefully followed this advice by immediately withdrawing his asylum appeal and then filing an adjustment of status petition. Socop argued that he should not be penalized for relying on the incorrect advice of the INS officer.

These facts—Socop's inability, through no fault of his own and despite due diligence, to discover that his April 6, 1996 deportation order became effective when he withdrew his appeal before the BIA— are precisely those needed to support an equitable tolling argument. *See Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1207 (9th Cir.1995). Unfortunately, neither Socop's opening brief nor his reply brief explicitly requested that the ninety-day limitations period for filing motions to reopen be equitably tolled. Instead, Socop requested relief based on the doctrine of equitable estoppel, which is similar to, but distinct from, equitable tolling.

■ Both equitable tolling and equitable estoppel can be used to "stop a limitations period from continuing to run after it has already begun to run." *See Gardenhire v. IRS,* 220 B.R. 376, 382 (BAP 9th Cir.1998), *rev'd on other grounds,* 209 F.3d 1145 (9th Cir.2000). But while tolling "focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant," estoppel "focuses on the actions of the defendant." *Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir.1981); *see also Lehman v. United States,* 154 F.3d 1010, 1015–17 (9th Cir.1998) (discussing both theories), *cert. denied,* 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999); *Stitt v. Williams,* 919 F.2d 516, 522 (9th Cir.1990) ("[E]quitable tolling applies when the plaintiff is unaware of his cause of action, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit.").

■ Equitable estoppel cannot serve as the basis for relief in this case because Socop would have to show that the INS officer engaged in "affirmative misconduct" when she provided him with incorrect advice. *Mukherjee v. INS,* 793 F.2d 1006, 1008 (9th Cir.1986) (citation omitted). We have previously defined "affirmative misconduct" to mean a "deliberate lie" or "a pattern of false promises." *Id.* at 1009. Negligently providing misinformation to an alien does not meet this definition, so Socop cannot prevail on an estoppel theory. *See id.* at 1009 (holding that there was no affirmative misconduct where the consular officer failed to inform petitioner that his visa was approved and misinformed petitioner that he was not subject to a two-year residency requirement).

■ By contrast, equitable tolling does not require affirmative misconduct on be-

---

shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations...." This exhaustion requirement applies to Socop be-

cause "[t]he transitional rules incorporate 8 U.S.C. § 1105a(c)...." *Hose v. INS,* 180 F.3d 992, 996 (9th Cir.1999). The post-IIRI-RA exhaustion requirement is codified at INA § 242(d), 8 U.S.C. § 1252(d).

half of the opposing party; rather, "[a]ll one need show is that by the exercise of reasonable diligence the proponent of tolling could not have discovered essential information bearing on the claim." *Gardenhire*, 220 B.R. at 382; *see also Bell v. Fowler*, 99 F.3d 262, 266 n. 2 (8th Cir.1996) ("Equitable tolling does not require any misconduct on the part of the defendant.") (citation omitted). Even though Socop's lawyer mistakenly invoked equitable estoppel instead of equitable tolling as the basis for relief, for the following reasons we hold that Socop is not barred from presenting a meritorious tolling argument on appeal.

First, the Supreme Court itself has established that it is appropriate to decide a case on tolling grounds, even though it was argued before and decided by the court of appeals as an estoppel case. *See Honda v. Clark*, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967). In *Honda*, the Supreme Court observed that "[b]oth as the case was treated by the lower courts and as it was largely argued here, the limitations issue has been thought to turn on whether the Government is estopped from asserting the 60–day time bar provided for actions of this kind." *Honda*, 386 U.S. at 486, 87 S.Ct. 1188. This statement accurately reflects the appellate court proceedings in this case.[7] Although the tolling

argument had not been properly raised before the court of appeals, the Supreme Court nevertheless concluded: "Quite apart from any question of governmental estoppel respecting assertion of the statute of limitations ... we consider that the limitations period was in any event tolled ... and that petitioners' right to bring their suit was not foreclosed." *Id.* at 494–95, 87 S.Ct. 1188.

Second, we decline to penalize Socop for his lawyer's failure to seize on equitable tolling, as opposed to equitable estoppel, as the correct theory on which to premise his request for relief. Our court has observed that there is "clearly some overlap" between equitable tolling and estoppel, and that the two can be difficult to distinguish. *Supermail*, 68 F.3d at 1207; *see also Benitez–Pons v. Puerto Rico*, 136 F.3d 54, 62 (1st Cir.1998) ("Equitable estoppel has a similar origin and effect as equitable tolling, although it is a distinct doctrine.").

Moreover, Socop's lawyer is not the first to conflate the two concepts. Courts themselves often "use the terms 'equitable tolling' and 'equitable estoppel' interchangeably or incorrectly." 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1056 (2d ed. Supp.2001)

7. *See Kondo v. Katzenbach*, 356 F.2d 351 (D.C.Cir.1966), *rev'd sub nom. Honda v. Clark*, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967). The appellants' opening brief before the court of appeals mentioned only estoppel but did not mention tolling. *See, e.g.*, Br. for Appellants at (i), *Kondo*, 356 F.2d 351 (1967) (Nos. 19,282 & 19,284) (phrasing the question presented as "whether ... equitable estoppel ... is available against the United States in suits under the Trading With The Enemy Act," and not mentioning equitable tolling). The same is true for the appellee's answering brief in that case. *See* Br. for Appellee, *Kondo*, 356 F.2d 351 (Nos.19,282–19,284). Unlike their opening briefs, the appellants' reply brief in *Kondo* did mention tolling. *See* Reply Br. for Appellants

at 2–6, *Kondo*, 356 F.2d 351 (Nos. 19,282 & 19,284). However, "[p]oints raised for the first time in a reply brief are not normally to be considered on appeal." *United States v. Haldeman*, 559 F.2d 31, 78 (1976) (citing *Finsky v. Union Carbide & Carbon Corp.*, 249 F.2d 449, 459 (7th Cir.1957), cert. denied, 356 U.S. 957, 78 S.Ct. 993, 2 L.Ed.2d 1065 (1958)); *see also Herbert v. National Academy of Sciences*, 974 F.2d 192, 196 (D.C.Cir.1992) ("This Court, of course, generally refuses to entertain arguments raised for the first time in an appellant's reply brief."). Finally, the majority opinion of the court of appeals, like the appellant's opening brief and the appellee's answering brief, also discussed only estoppel but did not discuss tolling. *See Kondo*, 356 F.2d at 352–59.

(citing cases); *see also Stitt*, 919 F.2d at 522 (noting that the case law regarding equitable estoppel and equitable tolling is "confused and contradictory," and that the district court "used the language of equitable estoppel" but applied the test "relevant to equitable tolling"); *Bell*, 99 F.3d at 266 n. 2 (noting that "[e]quitable estoppel and equitable tolling are two distinct concepts often blurred by inconsistent use of the terminology," and citing cases in which courts have confused the concepts); *McAllister v. FDIC*, 87 F.3d 762, 767 n. 4 (5th Cir.1996) ("Several courts, including the Supreme Court in *Irwin [v. Dep't of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1991) ], have used the terms 'equitable tolling' and 'equitable estoppel' interchangeably.").

Finally, we agree with Socop that regardless of the clarity with which he raised the equitable tolling argument in his briefs, the BIA did, in fact, address the question whether equitable considerations should toll the limitations period set forth in 8 C.F.R. § 3.2. In *Sagermark v. INS*, 767 F.2d 645 (9th Cir.1985), we had to decide whether the petitioner exhausted his administrative remedies where it was unclear whether he timely appealed the IJ's decision to the BIA. *Id.* at 648. We observed that the BIA did, in fact, consider the merits of the IJ's decision—a fact which led us to conclude that the petitioner had exhausted his remedies even if he failed to timely appeal to the BIA. We wrote, "[w]hether or not the decision on the merits was technically before the BIA, the BIA addressed it thoroughly enough to convince us that the relevant policy concerns underlying the exhaustion require-

ment—that an administrative agency should have a full opportunity to resolve a controversy or correct its own errors before judicial intervention—have been satisfied here." *Id.* at 648.

Similarly, we are satisfied that the BIA in Socop's case considered and addressed equitable tolling with sufficient thoroughness to dispel the fear that our consideration of this issue on appeal will interfere with agency autonomy. The BIA was aware of the equitable considerations that weighed in Socop's favor because Socop presented them in his briefs, and he explicitly urged the BIA to exercise its equitable powers to grant his motion to reopen. Despite this argument, the BIA held that the limitations period for filing a motion to reopen was subject to "certain exceptions not applicable here." The BIA went on to hold that even if Socop's motion were construed as a motion to reconsider, "there is no exception to the time bar" for filing such motions.

The BIA therefore had—and took advantage of—the opportunity to consider whether equitable considerations mandated applying an exception to the time bars set forth in § 3.2. "Where, as here, the agency *was* aware of the problem, where it *did* apply its expertise, where it *did* exercise its discretion, it [would be] bizarre—and decidedly unfair to petitioner—for us to refuse to review that decision...." *Singh–Bhathal v. INS*, 170 F.3d 943, 948 (9th Cir.1999) (Kozinski, J., dissenting in part). For all of these reasons, we conclude that Socop exhausted his remedies with respect to equitable tolling, and that we have jurisdiction to consider this issue on appeal.[8]

---

**8.** The INS also argues that Socop waived the equitable tolling argument because he failed to raise it before the original panel that heard this case on appeal. We conclude, however, that Socop did raise the tolling argument before the original panel, albeit inartfully. In his brief to the original panel, Socop requested that the court "toll" the ninety-day limitations period on an equitable estoppel theory. Socop also cited facts that would support an equitable tolling argument. For the reasons stated above, this was sufficient for Socop to

## III.

### STANDARD OF REVIEW

 We review for an abuse of discretion the BIA's denial of a motion to reopen. *Shaar v. INS,* 141 F.3d 953, 955 (9th Cir.1998). We review *de novo* "the BIA's determination of purely legal questions, including the BIA's interpretation of the Immigration and Nationality Act." *Lopez v. INS,* 184 F.3d 1097, 1099 (9th Cir. 1999) (citation omitted). Deference to the INS's interpretation of the immigration laws is only appropriate if Congress' intent is unclear. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "If a court, in employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Id.* at 843 n. 9, 104 S.Ct. 2778.

## IV.

### DISCUSSION

#### A. Section 3.2 and Equitable Tolling

The INS faces an uphill battle in convincing us that the filing period for motions to reopen is not amenable to equitable tolling. Agreement with the INS's position would require us to overrule our circuit's precedent, and also to create a circuit split. *See Varela,* 204 F.3d at 1240 (ninety-day filing period for motions to reopen may be equitably tolled); *Iavorski v. INS,* 232 F.3d 124, 130 (2d Cir.2000) (same).

In *Varela,* we held that the ninety-day period for filing motions to reopen established in 8 C.F.R. § 3.2(c)(2) was subject to equitable tolling where the petitioner was defrauded by an individual purporting to provide legal representation. *Varela,* 204 F.3d at 1240. In deciding *Varela,* we relied on an earlier case, *Lopez,* 184 F.3d at 1100, in which we equitably tolled a similar 180–day filing period for motions to reopen that applies to aliens who have been deported *in absentia.*[9] In holding

---

raise the tolling issue before the original panel.

Moreover, unlike the failure to exhaust administrative remedies with respect to an issue, failure to raise an issue before an original appellate panel does not preclude an *en banc* panel's jurisdiction over the issue. A court's decision to rehear a case *en banc* effectively means that the original three-judge panel never existed. This is why the original panel disposition may not be cited the very minute that a court votes to rehear a case *en banc.* The *en banc* court does not review the original panel decision, nor does it overrule the original panel decision. Rather, the *en banc* court acts as if it were hearing the case on appeal for the first time. This makes sense because the purpose of *en banc* review is to correct any errors that the original panel may have committed. If the original panel issues a clearly erroneous opinion, and the case is called *en banc* on grounds that would correct the opinion but which were not raised before the original panel, the *en banc* panel would

certainly be permitted, if not encouraged, to decide the case on the correct, unraised grounds. Accordingly, because Socop has unquestionably raised the equitable tolling argument before the *en banc* court, we may now decide the issue.

9. The statutory provision at issue in *Lopez* provided that, in cases where an alien was deported *in absentia,* a motion to reopen could be "filed within 180 days after ... [an] order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances...." *Lopez,* 184 F.3d at 1099. This provision was codified at INA § 242B(c)(3)(A), 8 U.S.C. § 1252b(c)(3)(A), and has since been repealed by IIRIRA § 308(b)(6). *Id.* at 1099. "Congress replaced th[is] provision with one that is in all respects identical except that what formerly was called 'deportation' is now referred to as 'removal.' *See* INA § 240(b)(5)(C)(i), codified at 8 U.S.C. § 1229a(b)(5)(C)(i)." *Jobe v. INS,* 238 F.3d 96, 99 n. 4 (1st Cir. 2001) (en banc).

**1188**

that the filing deadline in *Lopez* was subject to equitable tolling, we applied in a straightforward manner the rule stated long ago by the Supreme Court in *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946): that the equitable tolling doctrine " 'is read into *every* federal statute of limitation.' " *Lopez*, 184 F.3d at 1100 (quoting *Holmberg*, 327 U.S. at 397, 66 S.Ct. 582) (emphasis added in *Lopez* ).

The INS argues that we wrongly decided both *Varela* and *Lopez* because Congress intended compliance with filing deadlines for motions to reopen to be a jurisdictional requirement. Framed another way, the INS's position is that the filing deadline does not operate as a statute of limitations. If a time limit is jurisdictional, it is not subject to the defenses of waiver, equitable tolling, or equitable estoppel, although there may still be exceptions based on "unique circumstances." *See Zipes v. TWA, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (explaining that a statute of limitations, unlike a jurisdictional requirement, is subject to waiver, tolling, and estoppel); *Hernandez–Rivera v. INS*, 630 F.2d 1352, 1354–55 (9th Cir.1980) (applying "unique circumstances" exception to the "mandatory and jurisdictional" filing deadline for appeals from an Immigration Judge's decision to the BIA); *Vlaicu v. INS*, 998 F.2d 758, 760 (9th Cir.1993) (same); *Shamsi v. INS*, 998 F.2d 761, 762–63 (9th Cir.1993) (same). In contrast, if a time limit is "merely an ordinary statute of limitations engrafted upon a separate jurisdictional grant," it is subject to equitable tolling. *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 500 (3d Cir.1998).

■ The INS is correct that congressional intent controls the inquiry in this case: we must determine "whether congressional purpose is effectuated by tolling the statute of limitations in [these] circumstances." *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 427, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); *see also King v. California*, 784 F.2d 910, 914–15 (9th Cir.1986) (stating that the "basic inquiry" in "decid[ing] whether equitable tolling should apply" is "whether tolling the statute in certain situations will effectuate ... congressional purpose ....") (citing *Burnett*, 380 U.S. at 427, 85 S.Ct. 1050). We disagree with the INS's assertion, however, that Congress intended the filing deadline for motions to reopen to be jurisdictional.

■ We take as our starting place the presumption, read into "every federal statute of limitation," that filing deadlines are subject to equitable tolling. *Holmberg*, 327 U.S. at 397, 66 S.Ct. 582. We see no reason not to extend to the limitations period here the "same rebuttable presumption of equitable tolling" that applies in suits against private defendants and also in suits against the United States. *Irwin*, 498 U.S. at 95–96, 111 S.Ct. 453. We presume that Congress is aware of the doctrine of equitable tolling, *Exploration Co. v. United States*, 247 U.S. 435, 449, 38 S.Ct. 571, 62 L.Ed. 1200 (1918), and that it knows how to create a mandatory and jurisdictional filing requirement "if it wishes to do so." *Irwin*, 498 U.S. at 96, 111 S.Ct. 453; *see also id.* at 95, 111 S.Ct. 453 (presumption that equitable tolling applies to time limits in suits against the government is a "realistic assessment of legislative intent"). The INS may rebut the presumption of equitable tolling by showing that there is "good reason to believe that Congress did *not* want the equitable tolling doctrine to apply." *United States v. Brockamp*, 519 U.S. 347, 350, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997).

The Second Circuit recently concluded that the time period for filing motions to reopen is amenable to equitable tolling. *Iavorski*, 232 F.3d at 130. The court

found "no indication, either explicit or implicit, that Congress intended that this limitations period not be equitably tolled." *Id.* Like the Second Circuit, we take guidance from the line of Supreme Court cases that discusses the circumstances under which a deadline for filing suit against the government may be equitably tolled. These cases, taken together, establish several useful factors that courts may use to determine whether or not Congress intended compliance with a limitations period to be a jurisdictional requirement.

In *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), the Court considered whether equitable tolling applied to a filing deadline for bringing a court challenge to a final decision of the Secretary of Health and Human Services regarding social security benefits. The limitations period, set forth in 42 U.S.C. § 405(g), provided that a claimant could bring a challenge "within sixty days after the mailing to him of notice of such decision *or within such further time as the Secretary may allow.*" *Id.* at 472 n. 3, 106 S.Ct. 2022 (emphasis added). In concluding that Congress did not intend the limitations period to be jurisdictional, the Court found persuasive that Congress had expressly authorized the Secretary to toll the sixty-day limit, "thus expressing its clear intention to allow tolling in some cases." *Id.* at 480, 106 S.Ct. 2022.

In *Brockamp,* decided more than ten years after *Bowen,* the Court considered whether to equitably toll the time period, established in § 6511 of the Internal Revenue Code, in which taxpayers can file refund claims with the IRS. The Court began its analysis by presuming, under *Irwin,* that the time period was subject to equitable tolling. *Brockamp,* 519 U.S. at 350, 117 S.Ct. 849. The Court then turned to the language of § 6511, noting that it "set[ ] forth its time limitations in

unusually emphatic form." *Id.* at 350, 117 S.Ct. 849. Moreover, the statute "set[ ] forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions." *Id.* At several points, the statute tied a time limitation to the substantive amount that a taxpayer could claim, which meant that tolling the time period would also result in an adjustment of the taxpayer's recovery. *Id.* at 351, 117 S.Ct. 849. The Tax Code provision at issue also "reiterate[d] its limitations several times in several different ways." *Id.* at 351, 117 S.Ct. 849. Even though § 6511 set forth exceptions to the time limitations, the exceptions were "very specific" and did not include equitable tolling. *Id.*

Finally, the Court predicted that an administrative nightmare would result from applying equitable tolling to § 6511 because of the large number of tax refunds requested by taxpayers every year. *Id.* at 352, 117 S.Ct. 849. The Court inferred from this potential administrative problem that "Congress would likely have wanted to decide explicitly whether, or just where and when, to expand the statute's limitations periods, rather than delegate to the courts a generalized power to do so wherever a court concludes that equity so requires." *Id.* at 353, 117 S.Ct. 849. For all of these reasons, the Court concluded that Congress did not intend equitable tolling to apply to § 6511. *Id.* at 354, 117 S.Ct. 849.

In *United States v. Beggerly,* 524 U.S. 38, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998), the Court held that a twelve-year statute of limitations contained in the Quiet Title Act ("QTA") was not subject to equitable tolling. *Id.* at 48, 118 S.Ct. 1862. The statute provided that the limitations period did not begin to run until the plaintiff knew or should have known about the

United States' claim to the property in question. *Id.* The Court reasoned that because of this provision, the statute itself already provided for what was equivalent to equitable tolling. *Id.* The Court also felt that equitable tolling would be inappropriate given the "unusually generous nature of the QTA's limitations time period." *Id.* at 48–49, 118 S.Ct. 1862.

These three cases, taken together, guide our inquiry in this case. After examining the legislative history behind the filing deadline for motions to reopen established in 8 C.F.R. § 3.2(c)(2), and after comparing this deadline to those at issue in *Bowen*, *Brockamp*, and *Beggerly*, we conclude that the filing deadline for motions to reopen is subject to equitable tolling.

### 1. The Congressional Mandate

Prior to 1990, Congress imposed no limitation on when an alien could file a motion to reopen or reconsider. *See* 8 C.F.R. § 242.22 (now rescinded); *Iavorski*, 232 F.3d at 130–31. In response to the perception that aliens were abusing the review process to delay being deported, Congress passed the Immigration Act of 1990 ("1990 Act"), Pub.L. 101–649, 104 Stat. 4978. *Stone v. INS*, 514 U.S. 386, 399–400, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995). As part of the 1990 Act, Congress directed the Attorney General to "issue regulations with respect to the period of time in which motions to reopen and to reconsider may be offered in deportation proceedings, which regulations include a limitation on the number of such motions that may be filed and a maximum time period for the filing of such motions. . . ." Immigration Act of 1990 § 545(d), 104 Stat. at 5066. The Joint Explanatory Statement of the Committee Conference accompanying the 1990 Act directed the Attorney General, "in developing these regulations, [to] consider exceptions in the interest of justice."

H.R. CONF. REP. NO. 101–955, at 133 (1990), U.S. Code Cong. & Admin. News at 6784, 6797.

This congressional mandate is noteworthy for several reasons. First, unlike the "highly detailed" and "technical" time limits at issue in *Brockamp*, the mandate here is neither detailed nor technical. The mandate does not instruct the Attorney General to adopt specific time limits, but rather leaves the matter to the Attorney General's discretion. Second, the House Conference Committee instructed the Attorney General "to consider exceptions in the interest of justice." In *Bowen*, the Court concluded that Congress had expressly authorized tolling where the statute required filing within sixty days or "within such further time as the Secretary may allow." 476 U.S. at 472 n. 3, 106 S.Ct. 2022. Similarly, by instructing the Attorney General to permit exceptions to deadlines when justice requires, Congress has expressly authorized flexibility in the application of deadlines. *See Iavorski*, 232 F.3d at 131 (noting that this legislative history "indicates . . . that while Congress sought to impose general limits on motions to reopen, these limits were not intended to be inflexible"). If Congress really intended the filing deadline for motions to reopen to be jurisdictional, it would not have granted the Attorney General such broad flexibility: Either it would not have permitted exceptions at all, or it would have specified those exceptions itself in no uncertain terms. *Cf. Brockamp*, 519 U.S. at 351, 117 S.Ct. 849 (no tolling where exceptions spelled out in statute were "very specific" and did not include equitable tolling).

### 2. The Department of Justice's Regulations

Pursuant to the congressional mandate, the Department of Justice promulgated

regulations in 1996 that are now codified at 8 C.F.R. § 3.2 (applicable to BIA decisions) and 8 C.F.R. § 3.23 (applicable to IJ decisions). Even though the congressional mandate is more probative of congressional intent than the regulations promulgated by the Department of Justice pursuant to that mandate, the regulations also support the conclusion that the filing deadline for motions to reopen is amenable to equitable tolling. These regulations state that "a party may file only one motion to reopen deportation or exclusion proceedings ... and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened...." 8 C.F.R. § 3.2(c)(2).

This language is neither "unusually emphatic," *Brockamp*, 519 U.S. at 350, 117 S.Ct. 849, nor is it as strong as the language of the time bar in the Federal Tort Claims Act, to which we have applied equitable tolling. *Alvarez–Machain v. United States*, 107 F.3d 696, 700 (9th Cir.1997) (applying tolling to a time bar that stated: " 'A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues' ") (quoting 28 U.S.C. § 2401(b)). The time period—ninety days—is not "unusually generous," such that equitable tolling would be inappropriate. *Cf. Beggerly*, 524 U.S. at 48–49, 118 S.Ct. 1862. The time period does not already account for tolling by providing that it only begins to run when an alien knows or should have known that the BIA rendered a final decision in his or her case. *Cf. id.* at 48, 118 S.Ct. 1862; *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) ("[T]he 1–year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary.").

Presumably in response to the House Committee's instruction to "consider exceptions in the interest of justice," the Department of Justice created four exceptions to the ninety-day filing deadline. The ninety-day deadline does not apply to motions to reopen (1) filed by aliens who are deported *in absentia;* (2) filed by aliens seeking asylum or withholding of deportation based on changed country circumstances; (3) jointly filed by the alien and the INS; and (4) filed by the INS where the basis of the motion is fraud in the original proceeding or a crime that would support termination of asylum. 8 C.F.R. § 3.2(c)(3)(i-iv). As noted by the Second Circuit, "[t]hese exceptions to the time and numerical limitations on motions to reopen imposed by the new rule appear to respond precisely to Congress' desire to provide for certain cases, 'in the interest of justice' ... that would otherwise be excluded by such limits." *Iavorski*, 232 F.3d at 132 (citation omitted).

Moreover, the BIA "may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." 8 C.F.R. § 3.2(a). The regulation does not specify when the BIA should exercise this *sua sponte* power to reopen, but the BIA has ruled that it will reopen cases that present "exceptional circumstances." *In re J–J*, 21 I. & N. Dec. 976, 1997 WL 434418 (1997). In promulgating the regulations, the Department of Justice considered and rejected the suggestion, proposed by some commentators, that the ninety-day filing period for motions to reopen should contain a "good cause" exception. 61 Fed.Reg. 18,900, 18,902 (April 29, 1996). The Department of Justice did not reject the suggestion because it believed that a "good cause" exception should not exist; rather, it believed that the BIA's power *sua sponte* to reopen cases already covered the situation of an alien who filed

beyond the ninety-day period with good cause. *Id.*

■ These exceptions to the time limit help convince us that Congress did not intend to bar equitable tolling. While the presence of detailed exceptions can sometimes undermine the argument for equitable tolling, *see Brockamp,* 519 U.S. at 351–52, 117 S.Ct. 849, the exceptions to the ninety-day limit are less specific than those in *Brockamp* (particularly the BIA's *sua sponte* power to reopen any case), and are all examples of equitable circumstances that warrant refraining from holding that the ninety-day time limit is jurisdictional. *Cf. Bowen,* 476 U.S. at 480 n. 12, 106 S.Ct. 2022 (supporting application of equitable tolling by observing that the Social Security Administration's "regulations governing extensions of time for filing are based on considerations of fairness to claimants"). "This kind of accommodation for exceptional cases is irreconcilable ... with the strict application that would be required of a jurisdictional limitation." *Iavorski,* 232 F.3d at 132.

The Second Circuit makes the additional point that the Department of Justice itself has not treated the ninety-day filing deadline as if it were a jurisdictional requirement. *Id.* Shortly after the Department of Justice promulgated its final rule establishing the ninety-day limit for motions to reopen (on April 29, 1996), Congress enacted IIRIRA (on September 30, 1996). Congress codified the restrictions on motions to reopen and reconsider in IIRIRA § 304(a)(3). These restrictions follow the Department of Justice guidelines insofar as they restrict an alien to one motion to reopen, and require the motion to "be filed within ninety days of the of the date of the entry of a final administrative order." INA § 240(c)(6)(A), (C)(i), 8 U.S.C. § 1229a(c)(6)(A), (C)(i). The statute only lists two exceptions to the ninety-day time limit: (1) the limit does not apply to motions to reopen based on changed country conditions; and (2) aliens who are deported *in absentia* may file a motion to reopen within 180 days after the entry of the final removal order. INA § 240(c)(6)(C)(ii), (iii), 8 U.S.C. § 1229a(c)(6)(ii), (iii).

Despite the codification of only two exceptions to the ninety-day limit, the regulations continue to permit IJs and the BIA to reopen cases *sua sponte* at any time, and also to reopen motions jointly filed by the INS and the alien. *Iavorski,* 232 F.3d at 132. If the Department of Justice truly perceived the ninety-day deadline to be jurisdictional, the regulations would not permit these additional, uncodified exceptions. *Id.*

A final point is worth discussing. Statutes impose different kinds of time limits. Some of these time limits, usually termed "statutes of limitations," prescribe when a claimant "must first file suit following the point at which the cause of action arose." *Bailey v. West,* 160 F.3d 1360, 1364 (Fed. Cir.1998). Other time limits, usually termed "statutes specifying the time for review," prescribe "the time in which a person must remove from one adjudicative forum to another." *Id.* The INS suggests that because the filing deadline for motions to reopen is more akin to a statute specifying the time for review than to a statute of limitations, the filing deadline is mandatory and jurisdictional, and not subject to equitable tolling. *See Stone,* 514 U.S. at 405, 115 S.Ct. 1537 (describing statutes specifying the time for review as "mandatory and jurisdictional"). Even if the deadline for filing a motion to reopen with the same body were more akin to a statute governing review—and it is not—we would reject the INS's argument. Like the Federal Circuit, we do not believe that the Supreme Court meant to distinguish between statutes of limitations and statutes specifying the time for review when it

established the generally applicable rule in *Irwin* that time limits involved in filing suit against the government are presumed to be subject to equitable tolling. *Bailey*, 160 F.3d at 1366.

This conclusion seems inescapable given that *Irwin* itself as well as its jurisprudential forefather, *Bowen*, involved time limits that can be described *both* as statutes of limitations and as statutes specifying the time for review. The statute in *Irwin* "can be viewed as a statute of limitations or a statute specifying the time for review, because the 30–day limit measured the time in which to initiate a case in the United States District Court that would revisit the charge of discrimination alleged before the EEOC." *Bailey*, 160 F.3d at 1364. Similarly, the statute in *Bowen* can be described both as a statute of limitations and as a statute specifying the time of review because the sixty-day limit there measured the time in which to bring a case in the district court that would challenge the denial of social security benefits by the Secretary of Health and Human Services. *Bowen*, 476 U.S. at 472 n. 3, 106 S.Ct. 2022 (quoting statute). Given that the Supreme Court held that equitable tolling could be applied to the time limits in both *Irwin* and *Bowen*, we reject the suggestion that equitable tolling can never apply to statutes specifying the time for review.

### 3. Agency Deference

■ The INS urges that we defer to the BIA's refusal to recognize an equitable tolling exception to the filing deadline for motions to reopen. We may only defer to agency decisionmaking, however, when congressional intent is unclear. *Chevron*, 467 U.S. at 842, 104 S.Ct. 2778. After employing the "traditional tools of statutory construction," *id.* at 843 n. 9, 104 S.Ct. 2778, we conclude that Congress intended the filing period for motions to reopen to operate as a statute of limitations; Congress did not intend compliance with the

filing deadline to be a jurisdictional requirement. Therefore, we may not defer to the BIA's interpretation that the filing period is not subject to equitable tolling.

### B. Equitable Tolling As Applied

■ Having concluded that the filing period for motions to reopen is subject to equitable tolling, we now consider whether the filing period should have been tolled in Socop's case. We will apply equitable tolling in situations where, " 'despite all due diligence, [the party invoking equitable tolling] is unable to obtain vital information bearing on the existence of the claim.' " *Supermail*, 68 F.3d at 1207 (quoting *Stevens v. Sec'y of Dep't of Health & Human Servs.*, 31 Fed.Cl. 12, 23 (1994)). We have previously applied equitable tolling in situations where an alien was unaware, despite due diligence, that he missed the limitations period for filing a motion to reopen due to fraud by a third party, *Varela*, 204 F.3d at 1240, and due to ineffective assistance of counsel, *Lopez*, 184 F.3d at 1100. But the doctrine is by no means limited to these situations.

■ The inability to obtain vital information bearing on the existence of a claim need not be caused by the wrongful conduct of a third party. Rather, the party invoking tolling need only show that his or her ignorance of the limitations period was caused by circumstances beyond the party's control, *see, e.g., Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir.1999) (plaintiff's mental incapacity warranted equitable tolling), and that these circumstances go beyond a "garden variety claim of excusable neglect." *Irwin*, 111 S.Ct. at 458.

■ In this case, Socop seeks to toll the filing period during the time he was unaware that his final order of deportation had become effective—from May 5, 1997, when the BIA returned his case to the Immigration Court, until July 7, 1997,

when he received the "Bag and Baggage" letter ordering him to report for deportation. The question is whether, despite due diligence, Socop was prevented during this period, by circumstances beyond his control and going beyond "excusable neglect," from discovering that his order of deportation had become effective—the vital information he needed in order to determine that a motion to reopen was required in order to preserve his status.

We have no difficulty answering this question in the affirmative. Socop's deportation order was triggered precisely because he was diligently pursuing his rights. Socop sought advice from the INS in the first place because he was attempting to adjust his status on the basis of his marriage to an American citizen. He visited the INS office in Westminster on April 7, 1997 and, on that very same day, he followed the INS officer's advice and wrote a letter to the BIA withdrawing his asylum appeal. About two weeks later, on April 23, 1997, Socop filed an immediate relative visa petition, an application for adjustment of status, and an application for employment authorization. Socop was awaiting word from the INS regarding these applications when the BIA returned his case to the Immigration Court on May 5, 1997.

Between May 5, 1997 and July 7, 1997, Socop had no reason to believe that his deportation order had become effective. In fact, he had every reason to believe that he had followed the correct procedure for adjusting his status. We therefore hold that the period from May 5 until July 7 (a total of 63 days) should not have counted toward the ninety-day period during which Socop could have filed a motion to reopen.

We note that on July 7, when Socop was first put on notice that his deportation order had become effective, he still had twenty-seven days in which he could have filed a motion to reopen. A recent case in our circuit, *Santa Maria v. Pac. Bell*, 202 F.3d 1170 (9th Cir.2000), suggests that in order to extend tolling to Socop, we must further inquire whether he reasonably could have been expected to file his motion to reopen within the twenty-seven days remaining in the limitations period. In *Santa Maria*, the plaintiff asked that the court apply equitable tolling to the 300-day limitations period for filing a charge with the EEOC. *Id.* at 1178. The court declined to apply tolling because, even if the plaintiff did not have access to vital information bearing on the existence of his claim for *part* of the limitations period, he gained access to that information before the 300-day period expired. *Id.* at 1178–79. The panel held that regardless of when the plaintiff gained enough knowledge to enable him to file suit, "equitable tolling may not be invoked by an ADA plaintiff who, within the limitations period, has sufficient information to know of the possible existence of a claim." *Id.* at 1179.

The implication of this holding is that courts should not apply equitable tolling in situations where a plaintiff discovers the existence of a claim before the end of a limitations period and the court believes that the plaintiff reasonably could have been expected to bring a claim within the remainder of the limitations period. This approach to tolling was also adopted by the Seventh Circuit in a case cited with approval in *Santa Maria, Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir.1990) (holding that when a plaintiff gathers the "necessary information . . . after the claim arose but before the statute of limitations has run . . . . [the] plaintiff who invokes equitable tolling . . . must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information").

Were we to accept this approach to tolling, we would need to inquire whether

Socop—who learned before the expiration of the ninety-day filing period that his deportation order had become effective— could reasonably have been expected to file his motion to reopen in the twenty-seven days remaining in the limitations period.

We believe, and the following discussion will demonstrate, that this approach to tolling is needlessly difficult to administer, runs counter to Supreme Court precedent, and undermines the policy objectives of the statutes of limitations.

In tolling statutes of limitations, courts have typically assumed that the event that "tolls" the statute simply *stops the clock* until the occurrence of a later event that permits the statute to resume running. *See, e.g., Am. Pipe & Const. Co. v. Utah,* 414 U.S. 538, 561, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) ("The class suit brought by Utah was filed with 11 days yet to run in the period as tolled by § 5(b), and the intervenor *thus had 11 days* after the entry of the order denying them participation in the suit as class members in which to move for permission to intervene. Since their motions were filed only eight days after the entry of Judge Pence's order, *it follows that the motions were timely.*") (emphasis added); *Daviton v. Columbia/HCA Healthcare Corp.,* 241 F.3d 1131, 1138 (9th Cir.2001) (en banc) (stating that if tolling applied, the plaintiffs would have the full remainder of the filing period—six months—in which to file suit); *Supermail,* 68 F.3d at 1207 (holding that where the government provided inaccurate information to the plaintiff, causing the plaintiff to delay filing, dismissal was improper because plaintiff could establish tolling "*up to the date* that it learned of the IRS's levy on its property") (emphasis added). Indeed, the Court in *Irwin* phrased the issue in terms consistent with this understanding, noting that it granted certiorari "to determine when the 30–day period under

§ 2000e–16(c) *begins to run." Irwin,* 498 U.S. at 92, 111 S.Ct. 453 (emphasis added).

■■■ These cases employ the conventional rule that when a statute of limitations is tolled, the days during a tolled period simply are not counted against the limitations period. The rule employed in *Santa Maria,* and also by the Seventh Circuit in *Cada,* imposes a more complicated scheme: in addition to determining whether the party invoking tolling was unable, despite due diligence, to discover the existence of a claim, a court must also determine whether the party discovered the need to file early enough in the limitations period that he or she could reasonably be expected to file before the period expired. *Santa Maria,* 202 F.3d at 1179; *Cada,* 920 F.2d at 453.

The *Santa Maria* rule does away with the major advantages of statutes of limitations: the relative certainty and uniformity with which a statutory period may be calculated and applied. *See Burnett,* 380 U.S. at 436, 85 S.Ct. 1050 (stating that the policies served by statutes of limitations are "uniformity and certainty"). While under the conventional tolling rule there may be uncertainty in any given case whether equitable tolling will apply at all, the parties are able to calculate with some certainty the date on which the period would run if tolling is applied, and act accordingly. Moreover, litigants across the board are given the same amount of time in which to file a claim. The *Santa Maria* rule, in contrast, promotes inconsistency of application and uncertainty of calculation, thus undermining two of the purposes served by statutes of limitations.

The approach taken in *Santa Maria* was also explicitly rejected by the Supreme Court in *Burnett.* In *Burnett,* the Court decided to apply equitable tolling to a limitations period within which to bring suit under the Federal Employers' Liability

Act (FELA). *Burnett,* 380 U.S. at 434–35, 85 S.Ct. 1050. The plaintiff originally filed suit in the wrong venue, and brought suit in the proper venue only after the limitations period had run. *Id.* at 425, 85 S.Ct. 1050. After deciding that equitable circumstances warranted the application of tolling, the Court had to determine for how long the filing period should be tolled. The Court explicitly rejected the suggestion that the filing period be tolled "for a 'reasonable time' after the state court orders the plaintiff's action dismissed" because such a rule "would create uncertainty as to exactly when the limitation period again begins to run." *Id.* at 435, 85 S.Ct. 1050. Instead, in the name of greater uniformity and certainty, the Court adopted the rule that "under familiar principles which have been applied to statutes of limitations ... the limitation provision is tolled until the state court order dismissing the state action becomes final...." *Id.* This precedent appears to foreclose the approach to tolling taken in *Santa Maria* and *Cada.*

Finally, the approach to tolling taken in *Santa Maria* and *Cada* trumps what is arguably Congress' intended policy objectives in setting forth a statutory limitations period—to permit plaintiffs to take a specified amount of time (even if they don't "need it," *Cada,* 920 F.2d at 452) to further investigate their claim and consider their options before deciding whether to file suit. A court may decide whether or not to use its equitable powers to toll a limitations period, but a court arguably usurps congressional authority when it tolls and then rewrites the statute of limitations by substituting its own subjective view of how much time a plaintiff reasonably needed to file suit. Moreover, the *Santa Maria* /*Cada* approach provides the plaintiff with an incentive to rush to court without fully considering his or her claim—a policy that serves none of the parties involved.

Accordingly, we reject the approach to tolling adopted in *Santa Maria,* and we need not inquire whether Socop reasonably could have filed his motion to reopen within the twenty-seven days remaining in the limitations period after he received the "Bag and Baggage" letter. *Cf. Iavorski,* 232 F.3d at 134 (asking only whether the alien acted with due diligence during "the period [he] seeks to have to have tolled") (citation and internal quotation marks omitted). Instead, we need only ask whether Socop filed within the limitations period after tolling is taken into account. Socop had until ninety days after July 7 to file a motion to reopen, or until October 5, 1997. Socop filed his motion to reopen on August 11, 1997, which is well before the October 5 cut-off. Therefore, Socop's motion to reopen was timely filed.

## C. Remand to the BIA

For the reasons stated above, we grant Socop's petition for review, reverse the BIA's denial of Socop's motion to reopen, and remand to the BIA. One final comment is in order. We note that, in addition to holding that Socop's motion to reopen was untimely filed, the BIA also held in the alternative that Socop's motion to reopen should be denied because he did not submit an approved visa petition and an application for adjustment of status at the time he filed his motion to reopen. The BIA's alternative holding is incorrect for one simple reason: Socop did not file a motion to reopen to seek adjustment of status; rather, he filed a motion to reopen to request that the BIA *reinstate his asylum appeal.* Therefore, there was no need for Socop to submit an approved visa petition or an adjustment of status petition to be entitled to the reopening of his case.

The BIA correctly observes that at the time Socop filed his motion to reopen (on August 11, 1997), the INS had

not yet approved his visa petition (it was approved on April 7, 1998). The BIA is incorrect as a matter of law, however, that Socop was required to submit an approved visa petition in order for the BIA to grant his motion to reopen. It is true that had Socop filed a motion to reopen to seek adjustment of status, the BIA only could have granted his motion if he also submitted an approved visa petition. *See In re Arthur*, 20 I. & N. Dec. 475 (1992).

But Socop did not move to reopen his deportation proceedings on the basis that he had become newly eligible for adjustment of status. Rather, the purpose of Socop's motion to reopen was to *reinstate his asylum appeal*, which he had erroneously dismissed at the direction of the INS. In the interim, Socop hoped, of course, that the INS would grant his visa petition. The INS actually concedes the point in its supplemental brief to the *en banc* panel, where it states: "The relief Socop requested [in his motion to reopen] was not adjustment of status, but rather, reinstatement of his appeal. . . ." Red Supp. Br. at 11.

## V.

### CONCLUSION

The ninety-day filing period for motions to reopen is subject to equitable tolling, and the facts of this case warrant equitable tolling. We therefore grant the petition for review, reverse the BIA's denial of the motion to reopen, and remand to the BIA so that it may consider the merits of Socop's motion to reopen.

PETITION GRANTED. REVERSED AND REMANDED.

O'SCANNLAIN, Circuit Judge, with whom Circuit Judge SILVERMAN joins, dissenting:

With respect, and with regret, I must dissent from the court's opinion; we simply don't have jurisdiction under any of the theories advanced by the majority.

Socop–Gonzalez ("Socop") first raised the issue of equitable tolling at oral argument before the en banc court; we have jurisdiction only over issues raised before the Board of Immigration Appeals ("BIA"). While Socop's plight may be sympathetic, nothing, not even forty-four pages of energetic legal massage by the majority, can cure the jurisdictional defect in this case. Socop's petition for review challenging the BIA's denial of his motion to reopen should have been dismissed for lack of jurisdiction.

### I

In April 1996, Socop filed a timely appeal with the BIA seeking review of the Immigration Judge's decision denying his request for asylum and withholding of deportation. Socop, indeed acting on poor advice given to him by an INS officer, sought to withdraw his pending appeal with the BIA in April 1997. On May 5, 1997, the BIA granted his request, which constituted a final administrative determination in his case. Socop thereafter decided that he never should have withdrawn his appeal and filed a motion to reopen with the BIA. However, Socop's motion was seven days late: a petitioner must file a motion to reopen within ninety days of the final administrative determination. *See* 8 C.F.R. § 3.2(c)(2).

Socop dealt with his legal hurdle by vigorously arguing to the BIA that the INS was equitably *estopped* from enforcing the ninety-day limitations period. In particular, he relied upon *In re Petition of LaVoie*, 349 F.Supp. 68, 72 (D.Vi.1972), in which a district court held that the INS was equitably estopped from enforcing a provision of the Immigration and Naturalization Act. The BIA, however, was unpersuaded by Socop's equitable estoppel argument, and denied his motion as untimely.

Socop then petitioned for review by this court. Socop reasserted his equitable estoppel argument, which the panel rejected. *Socop–Gonzalez v. INS*, 208 F.3d 838, 840 (9th Cir.2000) ("We hold that the doctrine of equitable estoppel does not apply in this case....."). After we agreed to hear the case en banc, Socop continued to press his equitable estoppel argument in his briefs.

At the en banc oral argument, however, Socop suddenly changed course. Socop now argues that the ninety-day period was equitably *tolled.* As we have repeatedly explained, equitable estoppel and equitable tolling are two distinct doctrines. *See, e.g., Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir.2000) (discussing differences between the two doctrines); *Lehman v. United States*, 154 F.3d 1010, 1015–17 (9th Cir.1998) (same); *Naton v. Bank of Cal.*, 649 F.2d 691, 696 (9th Cir. 1981) (same). Equitable estoppel holds that a party may be precluded from taking a position because of his affirmative misconduct. *See, e.g., Lehman*, 154 F.3d at 1016–17. Equitable tolling provides that a party's excusable ignorance may toll the limitations period. *See, e.g., Lehman*, 154 F.3d at 1015. Under equitable estoppel, the primary focus is the nature of the INS's conduct. Under equitable tolling, the primary focus is whether Socop's ignorance of the limitations period is excusable. Each issue is distinct and separate. Socop only raised estoppel before the BIA; he now raises tolling for the first time.

Congress has confined our jurisdiction to only those issues that the petitioner raised before the BIA. *See* 8 U.S.C. § 1105a(c) (repealed 1996);[1] *see also Vargas v. U.S. Dept. of Immigration and Nat-*

*uralization,* 831 F.2d 906, 907–08 (9th Cir. 1987) ("Failure to raise an issue in an appeal to the BIA ... deprives this court of jurisdiction to hear the matter."). Because Socop failed to raise the issue of equitable *tolling* with the BIA, we are without jurisdiction.

## II

The majority advances three unconvincing arguments in its strain to find jurisdiction under equitable tolling. First, the majority relies upon *Honda v. Clark*, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967). In *Honda*, depositors of the Yokohama Specie Bank filed claims against the United States under the Trading with the Enemy Act. The Court of Appeals had held that the depositors' claims were time-barred. *See Kondo v. Katzenbach*, 356 F.2d 351, 359 (D.C.Cir.1966). The Supreme Court reversed, concluding that the limitations period was equitably tolled. *Honda*, 386 U.S. at 486, 87 S.Ct. 1188.

The majority concedes that the depositors raised equitable tolling, as distinguished from equitable estoppel, with the Supreme Court. Nonetheless, the majority remarkably concludes that *Honda* stands for the proposition that if a party raises only equitable estoppel, the court may still consider whether equitable tolling applies. The fact that the depositors in *Honda* did not argue equitable tolling, apart from equitable estoppel, in their opening Court of Appeals brief, is irrelevant. The majority overlooks the fact that the Supreme Court never suggested that the depositors failed to raise equitable tolling with the lower courts.[2] This omission is unsurprising given that the government

---

**1.** Congress repealed § 1105(a). *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), § 306(b), 110 Stat. 3009–546, 3009–612. Nonetheless, as the majority concedes, *ante* at 1183, because Socop is subject to IIRIRA's transitional

rules, it remains applicable to his case. *See* § 309(c)(1)(B), 110 Stat. at 3009–625.

**2.** The Supreme Court did note that the depositors "largely" argued equitable estoppel with the Court, and that the lower courts had

did not argue that the depositors had waived equitable tolling. We cannot assume that the Supreme Court independently discovered that the depositors failed to raise the issue in its opening brief with the Court of Appeals.

In any event, the majority's reliance upon *Honda* is misplaced. The majority overlooks a critical distinction between *Honda* and this case: unlike the Immigration and Nationality Act, under the Trading with the Enemy Act there is *no* jurisdictional bar to consider issues that were not properly raised below. *Honda* cannot support the majority's excusal of Socop's belated attempt to raise equitable tolling.

### III

The majority next claims that we should assert jurisdiction to avoid "penaliz[ing] Socop for his lawyer's failure to seize on equitable tolling." Majority Opinion at 1185. In essence, the majority claims that we should excuse Socop's failure to raise equitable tolling because the doctrines of equitable estoppel and equitable tolling are easily confused with one another. While the subtleties between the doctrines may help explain Socop's lawyer's poor performance, it cannot cure the jurisdictional defect in this case. "Failure to raise an issue in an appeal to the BIA ... deprives this court of jurisdiction to hear the matter." *Vargas*, 831 F.2d at 907–08. Scoop's lawyer's poor performance is simply irrelevant to the jurisdictional question.

### IV

Finally, the majority incredulously claims that the BIA considered whether the limitations period should be equitably tolled. The fact that the majority makes this argument last is telling. There is not even a hint anywhere in the BIA's decision that it considered equitable tolling, as opposed to equitable estoppel. Of course,

limited its discussion to equitable estoppel.

this is not at all surprising given the fact that Socop only argued equitable *estoppel* in front of the BIA. Even if the BIA had addressed equitable tolling in its decision, it would merely be relevant to whether Socop raised the issue with the BIA. We only have jurisdiction over issues that were actually raised by the petitioner below; we cannot acquire jurisdiction simply because the BIA decides to review an issue sua sponte. *See Singh–Bhathal v. INS*, 170 F.3d 943, 947 (9th Cir.1999) (holding that court lacked jurisdiction over an issue not raised in front of the BIA even though a BIA dissenter expressly considered the issue). In any event, because Socop's BIA filings unambiguously show that he was only arguing equitable estoppel, the fact that the BIA might have considered the issue is irrelevant to the jurisdictional question.

The underlying circumstances of this case are unfortunate. But "bad facts" cannot create jurisdiction where none exists. I respectfully dissent from the majority's grant of Socop's petition for review.

*Honda,* 386 U.S. at 486, 87 S.Ct. 1188.